A. E. HERRICK and Others v. G. S. BARNES.

January 18, 1900.

Nos. 11,851—(169).

**Dismissal of Action.**

A trial court, whether the trial be with or without a jury, cannot rightly dismiss the action, without a verdict or findings of fact, on the ground that the plaintiff has failed to establish a cause of action, unless the evidence is such that it would not sustain a verdict or finding for the plaintiff.

**Conversion of Wheat—Storage Receipts—Evidence.**

Rule applied and evidence considered in an action by the holder of storage receipts for wheat, issued by a warehouseman, against a purchaser of the wheat from the warehouseman, for its conversion, and *held*: (1) That it was error for the trial court to dismiss the action without making findings of fact. (2) That the evidence would have sustained a finding to the effect that the title to the wheat in question was in the plaintiffs, and that it did not require, as a matter of law, a finding that they consented to the sale of the wheat to the defendant, and received the purchase price therefor. (3) That, if the storage receipts were intended by the parties thereto to cover the wheat actually in store, a misdescription of the grade thereof in the receipts would not, as between the parties, affect the title of the holder of the receipts to the wheat.

Appeal by plaintiffs from a judgment of the district court for Hennepin county dismissing the action, entered pursuant to the order of Harrison, J. Reversed.

*Wallace & Belden* and *C. A. Willard*, for appellants.

*Webster & Potter*, for respondent.

START, C. J.

1. The plaintiffs seek by this action to recover from the defendant $2,096.27, the value of their special property and interest in 4,000 bushels of wheat, alleged to have been converted by him. The cause was tried by the district court of the county of Hennepin without a jury, and at the close of the evidence the defendant moved the court to dismiss the action. Thereupon the court, without making any findings of fact, granted the motion, and a judg-

ment dismissing the action was entered, from which the plaintiffs appealed.

A trial court, whether the trial be with or without a jury, cannot rightly dismiss an action, without a verdict or findings of fact, on the ground that the plaintiff has failed to establish a cause of action, unless the evidence is such that it would not sustain a verdict or finding for the plaintiff. It is not sufficient that the evidence would sustain a verdict or finding for the defendant. It must be such as to require, as a matter of law, a verdict or finding against the plaintiff. Tharalson v. Wyman, 58 Minn. 233, 59 N. W. 1009. It therefore follows that the court erred in so dismissing this action, unless the evidence, as a matter of law, required such a finding. The defendant here claims that such is this case. His claims, briefly stated, are: (a) The evidence shows that the plaintiffs never had any title to or interest in the wheat in question. (b) The evidence conclusively shows that the wheat claimed by the plaintiffs was sold to the defendant with their consent and authority, and that they received the full purchase price thereof. Of these in order.

2. The evidence as to the plaintiffs' title to the wheat tended to show these facts: The plaintiffs, here designated as the "bank," were bankers doing business under the name of Eden Valley Bank, at Eden Valley, this state, and Messrs. Harris & Hukriede, here referred to as the "warehousemen," were engaged at the same place, during the times hereinafter stated, in operating a public warehouse or grain elevator. In August, 1897, they made an agreement with the bank, whereby the latter was to discount for them their drafts drawn by them on purchasers of wheat from them. They continued from this time until November 23, 1897, in the business of buying, storing, shipping, and selling grain, during which time they purchased wheat on their own account, storing it in their warehouse, and when they shipped it out they would draw drafts on the consignees, and place the drafts in the bank for collection. The drafts were placed to their credit, and they were allowed to check against such credits before it was known whether the drafts would be accepted or paid.

October 7 a draft of $1,000, so drawn and credited, was dishon-

ored, which left their account overdrawn. Thereupon the cashier of the bank went to the warehouse, and asked for security, and it was then agreed between the bank and the warehousemen that they should give the bank security on wheat in the warehouse to protect its account, and they accordingly issued to and delivered to the bank a storage ticket or receipt in the usual form for 2,000 bushels of No. 1 Northern wheat. On October 26 their account with the bank was overdrawn in the sum of $2,056.06, and the cashier called upon them for further security, and they issued to the bank another and similar storage receipt for 2,000 bushels more of No. 1 Northern wheat for the same purpose as the first ticket was issued. At the time when each of these tickets was delivered the cashier examined the wheat in the warehouse, and each time found at least 4,000 bushels of wheat therein. The capacity of the warehouse was 10,000 bushels, and from the date of the first receipt (October 8) to November 23, 1897, when the warehousemen ceased to operate the warehouse, they purchased and placed therein and shipped therefrom wheat from time to time, so that on the day last named there remained no wheat in the warehouse. The last 4,000 bushels of wheat therein were shipped to and delivered to the defendant at the city of Minneapolis. At this time their account with the bank, by reason of dishonored drafts, which the bank had discounted, and overdrafts, was overdrawn $2,096.27. There was no No. 1 Northern wheat, according to the grade given it at Minneapolis, in the warehouse between the date of the first receipt and the time when all of the wheat remaining in the warehouse was shipped to the defendant, but the wheat intended to be covered by the receipts by the parties hereto was the wheat in the warehouse at the times they were respectively issued. There was no evidence, that there were any outstanding receipts for wheat in the warehouse except those belonging to, and still retained by, the bank.

We are not prepared to hold that the evidence required a finding of all the foregoing facts, but do hold that, if the court had so found, the evidence would sustain it. Assuming, for the purposes of this appeal, the facts which the evidence tends to prove, the question for our decision is whether such facts establish the bank's title to the wheat so shipped out of the warehouse, and sold to the

defendant. If the wheat in the warehouse had been in fact No. 1 Northern, the title to the last 4,000 bushels thereof shipped out of the warehouse would have been in the bank by virtue of the receipts. This proposition is thoroughly settled by the decisions of this court. National Ex. Bank v. Wilder, 34 Minn. 149, 24 N. W. 699; Eggers v. National Bank of Commerce, 40 Minn. 182, 41 N. W. 971; Hall v. Pillsbury, 43 Minn. 33, 44 N. W. 673. The defendant, however, claims that:

"The wheat described in these receipts had no existence in the hands of the warehousemen at the time they were issued, and none afterwards came into their possession. These contracts, therefore, had no validity, and conveyed no title, because the pledgor had no such property to pledge.  *  *  *  The proof shows, not only that defendant never received any such wheat as that pledged by the contract, but that such wheat never had any existence as the subject-matter of the contract."

If it be true, as claimed, that the evidence shows that the warehousemen in this case never had any such wheat as that pledged by them to the bank, it follows that the receipts were invalid, and conveyed no title to any wheat to the pledgee. But is it true that the warehousemen did not have in their warehouse the wheat pledged? The fact that when the wheat in the warehouse reached Minneapolis it did not grade No. 1 Northern, or that it was not, in fact, at any time or place, of such grade, does not justify a negative answer to the question, for the wheat in the warehouse when the receipts were given was the wheat pledged by the warehousemen, and intended to be covered by the receipts. The bank's rights, by virtue of its receipts, are precisely as if it had actually deposited the 4,000 bushels in the warehouse, and received the storage receipts therefor. National Ex. Bank v. Wilder. Now, if such had been this case, could it be claimed that the bank lost its title to the wheat, and that the warehousemen could sell it, and vest the title thereto in the purchaser, because they had mistakenly or otherwise misdescribed the grade of the wheat in the receipts? If so, depositors can be deprived of their wheat without any remedy, for it would only be necessary for the warehousemen to misdescribe the grade of the wheat in the storage receipt, and then sell all of the wheat in the warehouse to a third party. Such is not the law.

If it be a fact in this case that the storage receipts were intended by the parties thereto to cover the actual wheat owned and held in store in their warehouse by the parties executing the receipts at the time they were issued, then, as between the parties, the mis-description of the grade is immaterial, and the title to the wheat then in the warehouse, to the extent of 4,000 bushels, vested in the bank. National Ex. Bank v. Wilder. The parties to the receipts, after they were issued, were tenants in common in the mass of wheat in the warehouse. The interest of the warehousemen in the mass was limited to the excess of wheat above what was necessary to meet the outstanding receipts. This excess they had a right to ship out and sell. As fast as the wheat was shipped out, and other wheat purchased and added to the common mass, the new wheat took the place of that originally deposited. The warehousemen in this case owned and had a right to ship and sell at all times all of the wheat in the warehouse in excess of 4,000 bushels, the amount called for by the storage receipts; but, when this limit was reached, they had no title to what remained, and could convey none to a purchaser thereof without the consent of the holder of the receipts. Hall v. Pillsbury.

It follows that the order of the trial court dismissing this action cannot be sustained on the ground that the evidence was not suffi-cient to sustain a finding that the plaintiffs had title to the wheat in question.

3. This brings us to the defendant's second claim. The evidence is not conclusive that the bank consented to the shipment and sale to the defendant of the last 4,000 bushels of wheat covered by the storage receipts, or that the bank received the purchase price there-for. The bank held the wheat covered by the receipts as a con-tinuing security for the payment of any overdrafts by the ware-housemen. Their account was overdrawn when they ceased to op-erate their warehouse and the receipts are still retained by the bank; hence there is no presumption that it consented to the sale of the wheat covered by the receipts. The burden, therefore, was upon the defendant to establish this alleged defense. It is true, as claimed, that the cashier, who had the exclusive management of the business of the bank, knew that wheat was being shipped from

the warehouse, and sold to the defendant, and that he discounted drafts drawn on the defendant on account thereof; and, further, that he urged the warehousemen to ship out wheat, and reduce their account. But there was no direct evidence that the cashier knew that the wheat in the warehouse was being reduced below 4,000 bushels, and the circumstantial evidence on this point is not conclusive. On the contrary, he denied that he knew it, and there was evidence tending to show that the warehousemen told him that their warehouse was crowded with wheat, and that they had difficulty in getting cars in which to ship it.

Upon the whole record we hold that the trial court ought to have made findings as to the material issues in this case, and that it was error to dismiss the action without so doing.

Judgment reversed, and a new trial granted.