R. J. MANN and Others v. J. D. LAMB and Others.[1]

April 19, 1901.

Nos. 12,538—(92).

Conversion—Storage Receipt—Amendment of Findings.

Action by the holder of a storage receipt for wheat, issued by a warehouseman, against the purchaser of the wheat from the warehouseman, for its conversion. Evidence considered and *held* that it sustains the

[1] Reported in 85 N. W. 827.

findings of the trial court to the effect that the receipt holder consented to such sale and collected the purchase price thereof, and, further, that the court did not err in refusing to amend its findings in this respect.

Action in the municipal court of Minneapolis to recover $495, and interest, damages for conversion. The case was tried before Kerr, J.; who found in favor of defendants. From a judgment entered pursuant to the findings, plaintiffs appealed. Affirmed.

*F. R. Allen*, for appellants.

*Flannery & Cooke*, for respondents.

START, C. J.

This is an action for the conversion of a car load of wheat. Trial by the court without a jury. The here material facts, as found by the trial court, briefly stated according to their legal effect, are these:

The defendants are commission men at the city of Minneapolis; plaintiffs are bankers at the village of Brownton. From October 5, 1899, to July following, Herman L. Kuebler lived in the village, and owned a flat warehouse of the capacity of five thousand bushels of grain, located in the same block as the plaintiffs' banking office. During this time he was engaged in buying and selling grain of different kinds, and storing it in his warehouse, and shipping it out on his own account. While he occasionally received into his warehouse grain belonging to others, and held it for them for a few days, yet he never so received any grain except for the purpose of purchasing it. On October 5, 1899, he borrowed of the plaintiffs the sum of $2,500; and at the same time, as security therefor, he delivered to them a warehouse receipt which recited that he had received from them five thousand bushels of wheat, to be held in store for them in his warehouse, to be delivered to them on the return of the receipt. He then had in his warehouse between two and three thousand bushels of wheat, and he has paid upon the loan $1,750, and no more.

On July 19 he loaded a car on the tracks of the railway company with wheat from his warehouse, putting therein seven hundred twenty-nine bushels, and leaving only ninety-five bushels in the warehouse. The railway company delivered to him a bill of

lading in the usual form for the wheat, wherein he was named as consignor, and the defendants as consignees. He delivered the bill of lading to the plaintiffs, and at the same time drew a sight draft upon defendants against the wheat, requesting them to pay to plaintiffs' order $500, and delivered the same to them. They attached the draft to the bill of lading, and sent them both, properly indorsed, to their agent, a bank in Minneapolis, for collection and delivery. The defendants paid to plaintiffs' agent $500, and received from it the bill of lading for the car load of wheat in question, after receiving the bill of lading, and by reason thereof they were enabled to and did receive the wheat itself. The other allegations of fact alleged in the pleadings, one of which was that Kuebler was a public warehouseman, the trial court found were not proven.

As a conclusion of law, the court directed judgment for the defendants on the merits. Thereupon the plaintiffs moved the court to amend its findings of fact so as to add thereto the following:

"That said plaintiffs had no knowledge nor information as to the amount of wheat in said Kuebler's warehouse, and did not know that the said warehouse receipt held by them covered the wheat in said bill of lading at the time of the shipment of said wheat, nor at the time of the receipt of said bill of lading by them, nor at the time of the accounting and payment by them to said Kuebler for said wheat."

The motion was denied. Judgment was entered as directed, from which the plaintiffs appealed to this court.

All of the plaintiffs' sufficient and material assignments of error are included in their second alleged error, which is to the effect that the trial court erred in refusing to add to its findings of fact the proposed finding we have quoted, and in their fourth assignment of error, which is to the effect that it was error to find that Kuebler was not a public warehouseman. It is not necessary to consider this last alleged error, if it be true that the court did not err in refusing to amend its findings as requested. The findings of fact as made by the court justify prima facie the conclusion that the plaintiffs consented to the shipping of the wheat to the defendants, and that they, in legal effect, delivered

it to the defendants, and collected from them the purchase price therefor. It is too obvious for discussion that, if the court did not err in refusing to modify its findings as requested, its conclusion of law was correct.

The pivotal question, then, on this appeal, is whether the court did err in refusing to so modify the findings. Unless the evidence conclusively establishes the truth of the proposed finding, the action of the trial court cannot be disturbed. In this respect this case is the reverse of Herrick v. Barnes, 78 Minn. 475, 81 N. W. 526, relied upon by the plaintiffs. In that case the trial court dismissed the action at the close of the evidence without making findings of fact. This was held error, because the evidence did not, as a matter of law, require a finding that the plaintiffs consented to the sale of the wheat. But in this case the court did pass on the evidence, and in effect found against the plaintiffs; and on appeal its action stands as any other finding of the court, and cannot be reversed if there is any evidence fairly sustaining it.

The plaintiffs' contention is that the evidence is conclusive that they did not know that the bill of lading in question represented any wheat upon which they had any claim; therefore they could not and did not consent to its shipment and sale. If it be true that the evidence was conclusive in favor of the plaintiffs, the trial court erred, otherwise not. The only evidence on this question was that of the cashier of the plaintiffs. His testimony was as follows:

"Q. At the time you received that draft and that bill of lading which is marked 'Defendants' Exhibit I,' did you know for what wheat that bill of lading was given? A. I did not. Q. And this, you say, was done in due course of business? A. Yes, sir. Q. You had done business with Mr. Kuebler in the same way before? A. Yes, sir." "Q. Did you know how much wheat Mr. Kuebler had in his warehouse at the time when you gave him credit upon this draft? A. No, sir. Q. Did you know how much wheat he had in his warehouse at the time when you received this bill of lading, Exhibit I? A. No, sir."

On his cross-examination on this point he testified thus:
83 M.—2

"Q. You know the warehouse that Mr. Kuebler has there, do you? A. Yes, sir. Q. A 'flat house,' he calls it? A. Yes. Q. And you know he only had one there in that town, don't you? A. Yes, sir. Q. And you know any wheat he ships he takes out of that warehouse? A. Yes, sir. Q. And you knew he took this car load of wheat out of that warehouse, didn't you? A. Yes, sir. Q. And, of course, you knew it was coming to Lamb, McGregor & Co., consigned to them from the bill of lading? A. Yes, sir."

There is no evidence or claim that the plaintiffs did not know the capacity of the warehouse, or that they ever made any objection to the wheat being shipped out, or that they ever did anything to ascertain how much wheat there was in the warehouse, or that Kuebler ever represented to them that sufficient remained to pay their claim. On the contrary, it may be fairly inferred from the evidence that by the slightest investigation or inquiry on their part they could have learned the exact facts. The capacity of the warehouse was only five thousand bushels; and their receipt called for the same amount; hence every time a car load was shipped out they had notice that wheat upon which they claimed a lien was being sold, and that there was not enough remaining in the warehouse to satisfy their receipt. True, the amount of their claim against the warehouseman had been decreased by payments; but, knowing that the amount of wheat in the warehouse was being reduced below the amount covered by their receipt, they were, as against an innocent purchaser, put upon inquiry. The exercise of the slightest care would have prevented loss to themselves or innocent parties, yet, so far as appears from the evidence, they did not even take the trouble of asking Kuebler how much grain remained in the warehouse after the car load represented by the bill of lading had been taken out. A man may not shut his eyes, close his ears, and keep silent, and be heard to say that he had no knowledge of a fact, when he had knowledge of other facts which, if heeded, would have led directly to knowledge of the ultimate fact in question. It would have been an easy matter for the plaintiffs to have advised themselves as to the amount of grain in the warehouse, which was a small

one in the same block as their office.   The evidence sustains the findings and decision of the trial court.

Judgment affirmed.