# B. B. SHEFFIELD AND OTHERS v. F. W. CLIFFORD AND OTHERS.[1]

June 10, 1932.

No. 28,886.

[1]Reported in 243 N. W. 129.

*Junell, Oakley, Driscoll & Fletcher*, for appellants.

*Guesmer, Carson & MacGregor*, for respondents F. W. Clifford, J. H. Dahn, and Clifford & Dahn Company.

OLSEN, J.

Plaintiffs appeal from an order denying their motion for a new trial. Blended with the motion was a motion to strike out, amend, add to, and substitute other findings and conclusions.

An order denying a motion to amend, add to, strike out, or substitute other findings of fact or conclusions of law, or both, made by the trial court in a case tried without a jury, is not appealable. When such a motion is blended with a motion for a new trial and is denied, as a whole, the order is appealable as an order denying a motion for a new trial. On such an appeal our rule is that errors may be assigned upon the refusal of the court to amend specified findings of fact and conclusions of law, to add thereto, to strike out and substitute other specified findings and conclusions. It is proper, usual, and sometimes necessary to move the trial court to amend, strike out, and add to its findings of fact and conclusions of law and to substitute others in place thereof. But when it comes to an appeal here from such an order the questions presented usually reduce themselves to the inquiries of whether the findings of fact are sustained by the evidence, whether the findings of fact sustain the conclusions of law, whether the court has failed to find on one or more material issues of fact, and whether the evidence conclusively shows that different findings of fact should have been made. The last is but a different way of raising the question of the sufficiency of the evidence to sustain the findings of fact. All questions so raised are properly and usually raised by the motion for a new trial. The motion for amended or other findings of fact and conclusions of law is part of the record and will be given due effect here if it has material value, but extensive assignments of error aimed at the refusal of the court to alter or amend its findings and conclusions generally do not materially aid an appellate court. If the findings of fact as made cover all material issues in the case

302

and are sustained by the evidence, the refusal of the court to make different or additional findings is not important.

■ This action involves the ownership and right to possession of a trust fund of some $117,000 in the hands of the defendant Minnesota Loan & Trust Company. The court found that the fund belonged to and should be paid over to the defendants F. W. Clifford and J. H. Dahn, hereinafter referred to as the defendants. The evidence is too lengthy for us to give a recital thereof. The fund arose out of a contract of sale of certain corporations, or their capital stock and assets, to the defendants, made on or about March 3, 1926. These corporations were engaged in the flour milling and grain business. We refer to them hereinafter as the companies. The purchase price was $3,900,000. Plaintiffs are trustees and agents of the companies and their stockholders. The sale was evidenced by two written contracts, which, however, for all present purposes, may be referred to as one contract. In that contract the vendors, now represented by these plaintiffs, represented and agreed that the companies had and would have, at the date of the transfer of the stock of the companies (later agreed to be a transfer also of their assets) quick assets exceeding all liabilities by not less than $1,250,000. The agreement provided that the purchase price be paid and the stock delivered at the office of the Minnesota Loan & Trust Company at Minneapolis on March 15, 1926. The contract further provided that the vendors, within ten days after the payment of the purchase price, should furnish the purchasers with a statement showing the net quick assets of the companies as of the close of business on the date of payment. Within 30 days thereafter the purchasers might, at their option, cause the books of the companies to be audited by independent auditors. If such audit disclosed that the net quick assets of said companies on said date were in excess of $1,250,000, it was agreed that the companies might distribute such excess as a dividend to their stockholders. If the amount of said net quick assets was less than $1,250,000, the vendors agreed to pay in to the companies the amount of such deficiency in net quick assets so that the purchasers should receive the stock and assets of the companies with net quick assets of $1,250,000.

The dispute in the present case arises over these provisions as to net quick assets. The defendants did not avail themselves of the option to have the books of the companies audited by independent auditors within the time limited therefor. The court found that it was agreed that only one audit should be made by a firm of accountants to be employed by plaintiff Sheffield for both parties to avoid the expense and trouble of making two audits. Sheffield did employ such auditors. Defendants took no part in the audit. The court found in effect that Sheffield directed these auditors as to the classification of the assets and directed and induced them to include under the head of current assets items aggregating some $117,000 which were not quick assets, and that he represented to defendants that the audit was to show the quick assets, in the same manner as prior audits which had been shown to defendants, and that defendants relied on these representations. The audit was made and a copy thereof mailed by plaintiffs to defendants on or about April 1. A preliminary statement thereof had been mailed to them some days before. This audit showed "current assets," over and above liabilities, amounting to $1,419,968.02. Nothing was stated therein as to net quick assets. On the strength of this audit and before the properties were finally transferred, the plaintiffs caused to be distributed to the stockholders of the companies as dividends the amount of $169,968.02 out of the assets of the companies. On or about March 17 the defendants paid the agreed purchase price for the property, $900,000 in cash and $3,000,000 in promissory notes, due on various dates, with interest, all maturing within one year. This was authorized by the sales contract and accepted by plaintiffs. The cash and notes were turned over at the office of the Minnesota Loan & Trust Company, the notes to be kept by that company until paid. The money was thereafter paid in to the Minnesota Loan & Trust Company from time to time until the notes were fully paid. .

In the meantime, sometime in June or early July, 1926, and before all the money had been paid in on the notes, a dispute arose between the parties as to the amount of the net quick assets of the companies as of the date of March 15, 1926, the effective date of the

transfer. The defendants claimed that the net quick assets of the companies on that date amounted to not more than $1,302,783.30, and that by paying out therefrom $169,968.02 as dividends to stockholders the plaintiffs had depreciated the net quick assets $117,184.72 below the $1,250,000 of such assets which defendants were entitled to receive. They accordingly demanded that this sum of $117,184.72 in quick assets be repaid to them or restored to the assets of the companies. As to the $1,419,968.02 listed as "current assets" in the statement prepared by plaintiffs' auditors, the defendants claim that $117,184.72 thereof were not quick assets. Plaintiffs' claim is that all the assets listed as current assets in the statement of their auditors were quick assets, and therefore they had the right to distribute as dividends the excess of $169,968.02 of such current assets.

There was an agreement, not carried out, to submit the matter to arbitration. It was then stipulated and agreed that out of the money paid or to be paid by the defendants on the notes in the hands of the trust company that company should retain and keep in a trust fund the said sum of $117,184.72 so in dispute until the matter was settled. The trust fund so provided was set aside and retained by the trust company. This suit followed.

The trial court found in favor of the defendants, that the net quick assets of the companies amounted to not over $1,302,783.30, and that by paying out the dividends mentioned plaintiffs had reduced the net quick assets of the companies $117,184.72 below the required $1,250,000 which defendants were entitled to receive, and held that defendants were entitled to and should receive the trust fund in the hands of the trust company, less charges for the services of that company.

The trial court having found in favor of the defendants, we are required to consider the evidence in the light most favorable to them. The questions of what the words "quick assets" as used in the sales contract mean, and whether there was this deficiency in quick assets of the companies, were sharply contested at the trial. We are satisfied· that there is evidence sufficient to sustain the

court's findings on these questions. We do not deem it necessary to cite definitions or discuss decisions as to the meaning of "quick assets."

■ Plaintiffs present certain other propositions which it is claimed prevented recovery of this trust fund by defendants and entitled plaintiffs to possession and recovery thereof.

*First.* It is claimed that there was a practical construction of the sales contract to the effect that the words "quick assets" therein used meant and were understood by the parties to mean the same as "current assets." We cannot so hold as a matter of law.

*Second.* That the statement of the accountants, before referred to, constituted an account stated and was not objected to or repudiated promptly or within a reasonable time or within the time limited for defendants to make an independent audit. The evidence, as far as that question was raised, is not conclusive against defendants. There was nothing in the nature of a running account between the parties.

*Third.* That there was an accord and satisfaction based on such statement. The evidence, as we view it, would not sustain a finding of accord and satisfaction.

*Fourth.* That there was waiver, estoppel, or ratification. In that connection the defendant Clifford testified that Sheffield called him up shortly before the dividends before mentioned were paid and told him that the statement of the auditors showed more net quick assets than plaintiffs had agreed to have and that Clifford then said that if the auditors had certified that they had more quick assets than a million and a quarter the rest was no concern of defendants, that such excess did not belong to defendants, and if the auditors so certified plaintiffs could go ahead and pay such excess as dividends.

Taking all the evidence and facts and circumstances shown bearing on the questions, there was no conclusive showing of waiver, estoppel, or ratification.

■ The court made no direct findings on practical construction, account stated, accord and satisfaction, waiver, estoppel, or ratifica-

tion. The findings are to some extent findings of evidentiary rather than ultimate facts. But taken as a whole the findings may reasonably be construed as negativing each of these claims.

■ The plaintiffs moved for extended amendments and changes in the findings, presumably intended to show these claimed reasons why defendants should not prevail and plaintiffs should recover. The court denied all the amendments and changes asked. In that situation the findings sufficiently cover the issues presented. Mann v. Lamb, 83 Minn. 14, 85 N. W. 827; Kent v. Costin, 130 Minn. 450, 153 N. W. 874; In re Estate of Malchow, 143 Minn. 53, 172 N. W. 915; Seitz v. Union B. & M. Mfg. Co. 152 Minn. 460, 189 N. W. 586, 27 A. L. R. 293; Bahr v. Union F. Ins. Co. 167 Minn. 479, 209 N. W. 490.

Where the court refuses to make proposed amendments or changes in the findings, that is equivalent to findings negativing the facts asked to be found. In re Estate of Malchow, 143 Minn. 53, 172 N. W. 915; Seitz v. Union B. & M. Mfg. Co. 152 Minn. 460, 189 N. W. 586, 27 A. L. R. 293.

■ The finding by the court that the parties agreed to have but one audit of the companies' books by auditors acting for both parties and to be employed by Sheffield, thereby modifying the provisions of the sales contract as to an independent audit by defendants, is challenged as not sustained by the evidence. We think the evidence as to the negotiations between the parties and their conduct in reference to the audit reasonably leads to the inference and conclusion that there was such an agreement.

■ It is argued that because defendants sold the properties purchased by them to another corporation or merged them with such other corporation, and in so doing paid in to said other corporation, by the Clifford & Dahn Company, the $117,184.72 claimed deficiency in net quick assets, therefore defendants are now mere volunteers. The court found that this payment was made by the Clifford & Dahn Company on behalf of these defendants. The finding is sustained by the evidence. Defendants stand in the same position as if the payment had been made by themselves. In any event, if there

was this deficiency in net quick assets and plaintiffs were obligated to make good that deficiency in the assets of the companies sold to defendants, and refused so to do, plaintiffs would be liable to defendants therefor irrespective of whether or not anyone else had repaid or restored these assets to the companies.

We find no other assignments of error requiring special consideration.

The order appealed from is affirmed.

Stone, J. (dissenting).

Concurring generally in the theory of decision, both here and in the district court, I cannot extend my agreement to its application to two substantial items in controversy. One of them consists of prepaid interest and insurance aggregating $46,905.73. Such items cannot be either current or quick assets, but it occurs to me that plaintiffs may be entitled to credit for some of them. Plainly they reduced or liquidated what otherwise would have been liabilities, and the purchasers had the benefit. It may be that the question is all one of fact and so settled by the decision below. Without going into detail, I am not convinced that as to all of these items the decision is correct as matter of law.

There is another item of "transit freight," aggregating $28,479.32, which in my opinion should be considered a quick asset, even under the definitions vouched for by counsel for defendants. The money was paid, as I understand record and argument, in advance freight on grain to be milled in transit, the money to be forthcoming from the manufactured products in the usual course of business, and so speedily returned to the corporation's treasury. It was an asset "which in the ordinary course of business will be readily and quickly realized" and so to be classified as "quick" under the terminology adopted by the American Institute of Accountants (Journal of Accountancy, January to June, 1923, p. 465). There we have, it seems to me, a question of law, to be decided on facts, none of which are in controversy, as was done in In re American K. G. Mfg. Co. 173 F. 480, 97 C. C. A. 486. There "quick," as used in a financial statement, was held to "distinguish liquid assets from those permanently

invested in the business, like real estate and machinery." Liquid, certainly, was this prepaid freight item. And, under this contract, "quick" also and as matter of law, in my opinion.

I agree that the other items in controversy (office and advertising supplies, $23,503.80, and "miscellaneous," $4,233.76) were not quick assets.