KATHERINE MOTZKO, BY ANDREW SHOOK, HER GUARDIAN, v. VINCENT MOTZKO AND ANOTHER.[1]

May 17, 1946.

No. 34,143.

[1]Reported in 22 N. W. (2d) 920.

*Frank L. King,* for appellant.
*Joyce S. Lewis* and *Barron & Bradford,* for respondents.

JULIUS J. OLSON, JUSTICE.

Two cases are here for review. Tried together below, they are similarly submitted here. While the court made separate findings and conclusions of law in each case, the result reached in both was that "Defendant is entitled to judgment, that plaintiff take nothing herein, and that he recover his costs and disbursements, to be taxed."

■ Next came plaintiff's blended motion, both cases being included therein, for amended findings or new trial. Denial *in toto* of this motion brings for review only that part of the mentioned order denying a new trial. This result follows, since—

"* * * We have repeatedly held that denial of such a motion brings for review only that part of the order denying a new trial. Insofar as the order denied amended or additional findings, no appeal lies therefrom. * * * And, * * * a denial of that part of

the motion (to amend the findings or to make additional findings) amounts to a finding contrary to what the moving party asks for." Droege v. Brockmeyer, 214 Minn. 182, 187, 7 N. W. (2d) 538, 542.

Since the facts are in substance identical in the two cases, they may be summarized in this fashion: Defendants, Vincent and Stanley Motzko, are the sons of Norbert and Katherine Motzko. In December 1915, after many years of hard work and industry, the parents concluded to retire from their arduous tasks of farming and, for reasons ofttimes found in such circumstances, decided to make certain gifts to their children. They owned two farms in Todd county. On December 3, 1915, they entered into a written agreement with their son Stanley whereby they agreed to convey one of their farms to him in return for his promises and covenants to provide for his parents' future needs and requirements. Certain specific items were to be provided, such as a given number of bushels of wheat, rye, corn, and oats, and "as many bushels potatoes as are grown on one acre of said land." Delivery of a given quantity of hay and "6 cords hardwood" was also provided for. Stanley and his brother Bert were also to provide the parents with "such medical attendance, medicine, nursing and care as they, or either of them, may require during their lifetime." Furthermore, Stanley agreed to pay each of his four sisters $450 within 20 years and to pay interest annually at the rate of five percent.

On January 7, 1916, the parents made the same kind of agreement with their son Vincent covering their second farm. Thereby Vincent agreed to perform practically the same obligations as those agreed to by Stanley in respect to the parents' support. He, too, agreed to pay his sisters the same amounts and upon the same terms as were included in Vincent's contract. These payments are in no way involved in either case.

In 1919, the parents moved to Browerville, and Vincent married and took over the second farm. On June 30, 1924, the parents conveyed the first farm to Stanley, and on March 25, 1925, they conveyed the second farm to Vincent. Both conveyances were by deeds of general warranty, and both instruments were promptly recorded.

When the parents moved to Browerville, they could not use the farm produce and many other items provided for in the original agreements. Instead, what they wanted and received was support in the usual way suitable to their new environments. These were furnished and accepted by both parents until the father's death in 1931. Since then, the mother "has been amply provided for by Stanley and Vincent." Various other changes were made from time to time, but, everything considered, the record and the court's findings leave no doubt that defendants have in good faith and with filial loyalty taken proper and appropriate care of their parents. In its memorandum, the court mentions the fact that the oats, barley, wheat, rye, and other items were not wanted by the parents after they moved to Browerville,—

"but they did need flour, butter, meat, etc., and they asked the latter in lieu of the former, and received it. Such contracts have a tendency to lead to litigation but Katherine Motzko has been fortunate. Her needs for the rest of her life and her burial and interment are assumed by her two sons, but she has no estate to require a guardian. Upon her death Stanley's and Vincent's obligations for her care, maintenance, etc., will terminate save for the cost of interment. That obligation they must (and presumably will) fulfill."

There is only one issue here to be decided, namely, whether the court's findings are sustained by the evidence, since, as we have often definitely held:

"An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection." Louden v. Louden, 221 Minn. 338, 339, 22 N. W. (2d) 164, 166, and cases there cited.

This requirement plaintiff has not met, so we may safely proceed to the determinative issue.

Plaintiff has thrown at us a voluminous record of 334 pages. In addition, there are a great many exhibits. Since the history of

this case runs back nearly 30 years, our labor has not been a light one to perform. Plaintiff can neither read nor write, but she appeared at the trial and there testified understandingly and at length. Of course, there was also a great deal of other testimony introduced. That the trial court duly considered all the evidence, the record and its findings abundantly establish.

This litigation is not founded upon defendants' refusal or failure to respond to their filial and contract obligations to the parents. The trial judge put his finger on the cause of this litigation when he found as follows:

"* * * The four sisters met in the late fall of 1944 and decided that the mother should be moved into the home of one of them. It is evident that animosity has existed on the part of the sisters for some time and that at least one hoped to realize upon a small bequest in the father's will if Katherine should die possessed of sufficient funds. Katherine was moved, Mr. Shook was duly appointed the guardian of her estate and this action was commenced."

The record abundantly justifies the findings of fact that plaintiff has been and will be amply provided for during the balance of her natural life. Her future is secure against want or privation. The daughters with whom she lives and will continue to live will see to it that defendants' obligations are fully and promptly met. Then, too, the expenses of the mother's funeral and the Masses for the repose of her soul have been provided for. She can trustingly look toward the eventide of life with the calm satisfaction of having lived a long and good life and one which justly entitles her to the reward which her religion and devotion thereto have taught her to expect.

We have not overlooked plaintiff's arguments in her brief that certain notes given in settlement or adjustment of past events have not been properly determined by the trial court. Examination of the record discloses no want of facts to support the court's findings which sustained defendants' contentions.

Order affirmed.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.

[1]Reported in 23 N. W. (2d) 22.