CARL B. ANDERSON, *d.b.a.* ANDERSON HOMES, v. ELMER
J. TUOMI, LOCAL NO. 1490 OF UNITED BROTHERHOOD
OF CARPENTERS AND JOINERS OF AMERICA,
AND OTHERS.[1]

March 31, 1950.

Nos. 35,140, 35,141.

---

[1]Reported in 42 N. W. (2d) 204.

*D. A. Bourgin* and *William J. Kraker,* for plaintiff-appellant.

*William D. Gunn,* for defendant-appellants.

THOMAS GALLAGHER, JUSTICE.

On August 26, 1949, the trial court made findings and conclusions and ordered judgment restraining defendants, and each of them, "from in any way interfering with or preventing or en-

couraging any of the members of the Carpenters Local No. 1490 from going back to work for the plaintiff." Subsequently, a writ of injunction to such effect was issued. This is an appeal from an order denying defendants' motion for a new trial.

On May 17, 1948, plaintiff and defendant Carpenters Local No. 1490 entered into a written contract containing the following provision:

### "Article II

"The parties agree that this contract shall commence on the 17th day of May, 1948, and shall continue to and including the 31st day of March, 1949, and shall continue in full force and effect from year to year thereafter unless written notice is given by either party to the other on or before 90 days prior to the annual expiration date, demanding that the agreement be amended or terminated. If the notice is to terminate, then the contract shall terminate on the next ensuing anniversary date. If the notice is to amend, then either party giving such notice shall serve the proposed amendments on the other party at least 30 days prior to the next ensuing expiration date."

On December 27, 1948, while said agreement was in effect, Local No. 1490, through its recording secretary, George Raihala, forwarded to plaintiff notice in the form of a letter, as follows:

"Virginia, Minn., Dec. 27 1948

"Carl B. Anderson
Anderson Homes
Virginia, Minn.

"Dear Sir:

"It is the wish of Carpenters Local 1490, to notify you of new contract negotiations. We want to change and discuss the following clauses, mileage to jobs out of town, wage raise, vacation plan, welfare fund.

"We would like to have our first meeting with you operators about March 1, 1949.

"Address your communication about suitable meeting time to—George Raihala Rec. Sec. Box 435, Aurora, Minn.

"Yours truly,

"George Raihala Rec. Sec."

Pursuant to a resolution adopted at a meeting of Local No. 1490 in December 1948, a written notice was mailed to all members of said local advising them to be present at a special meeting thereof to be held on January 7, 1949, for the purpose of determining whether Local No. 1490 should authorize its representative to call a strike against the contractors in the Virginia area, of which plaintiff was one.

As the result of the strike vote taken at this meeting, it was determined by a vote of 36 to 13 that the representative of Local No. 1490 was authorized to call a strike, it being agreed that such vote would be of assistance to the representatives in new contract negotiations with the contractors. As stated by defendants' witness, an official of Local No. 1490:

"It is our usual procedure when we send a negotiating committee out to meet with contractors, we just don't want to send them with handcuffs on their hands. We want to have some method of backing up their words."

Subsequently, on February 12, 1949, Local No. 1490 forwarded to plaintiff a second notice, as follows:

"Virginia, Minn., February 12 1949

"Anderson Homes Co.

215 So. 12th Street

Virginia, Minnesota.

"Dear Sirs:

"In accordance with the agreement made with your firm on the 18th day of July 1947, please be referred to Article Two of the agreement of Local 1490 of Virginia, Minnesota. They have in-

structed me to inform you that Local 1490 wishes to open the contract for necessary changes and the adjustment of wages.

\* \* \* \* \*

"Very truly yours,
"A. C. Viezbicke
Carpenters Local 1490
Recording Secretary."

On February 16, 1949, and at least within 30 days prior to the next ensuing expiration date of the contract, as required by Article II thereof, Local No. 1490 sent to plaintiff and other contractors in Virginia a written list of the proposed amendments which Local No. 1490 requested before the contract of May 17, 1948, would be renewed, as follows:

"Feb. 16, 1949

"To THE GENERAL CONTRACTORS OF VIRGINIA, MINN.

"The following are the contract changes requested by the Virginia Carpenters Local #1490:

"1 Vacations at the rate of 5 cents per hour, to be paid into a Vacation fund to be administered by a joint committee of union and contractors.

"2 Subsistence pay at the rate of $3.00 per day for every day away from home, this to apply when carpenters cannot return to their homes each night.

"3 Transportation to be paid for by the Employer for all travel over five miles from City of Virginia limits at the rate of seven cents per mile, when driver carries extra passengers he shall receive seven cents per mile for each extra passenger carried.

"When transportation is supplied by Employer it shall be heated and covered for inclemente wheather [sic].

"Time for one way travell [sic] at straight time shall be paid to all men travelling over five miles from City limits of Virginia.

"4 Wage demands—30 cents per hour over present scale.

"Elmer J. Tuomi
Business Representative."

Thereafter negotiations between Local No. 1490, plaintiff, and other contractors failed to lead to a new agreement by March 31, 1949. Members of Local No. 1490 continued working for plaintiff, however, and further negotiated with him in the hope that an agreement might be reached on the proposed changes. These negotiations failed, and on July 11, 1949, a strike notice was filed with the state labor conciliator and notice thereof given to plaintiff as required by M. S. A. 179.06. As a result thereof, the labor conciliator conducted a hearing between the parties on July 22, 1949, in an attempt to effect a settlement of the dispute, at which all parties appeared. Notwithstanding the efforts of the conciliator and several subsequent conferences, the parties failed to arrive at an agreement.

On August 8, 1949, nine carpenters, all members of Local No. 1490, while on the job for plaintiff, were advised by their business representative and by the business representative of the Iron Range Building Trades Council, with which Local No. 1490 was affiliated, that plaintiff had not signed a contract with Local No. 1490, and that they were invited to a meeting at the city hall in Virginia at noon that day to determine whether or not they wished to continue working for plaintiff. These employes did not thereafter return to work for plaintiff, but obtained employment elsewhere, although plaintiff then stated that he would agree to most of the proposed changes in the old contract. He refused defendants' request to enter into a new contract with the Iron Range Building Trades Council, an association with which Local No. 1490 had then affiliated.

The trial court specifically found that no threats, intimidation, or coercion was used on such members of Local No. 1490 by their representatives, or by anyone else, although they were led to believe that it was the Local's desire that they cease working for plaintiff in the absence of a contract. In its findings the trial court determined:

"4. That on January 7, 1949, at a meeting duly called for that purpose of Local No. 1490 a motion was made and carried to authorize the union representative to call a strike if he deemed it advisable against any of the contractors in the Virginia area. This strike vote was taken to assist the union representative in negotiating a new contract with said contractors or any of them, and was adopted by the following vote:

"In favor, 36;

"Opposed, 13;

"Not voting, 2.

"That at said time there were no negotiations pending between the union and the contractors or any of them in reference to changes in any existing contracts, nor had the union served any notice on any of the contractors that they were going to demand any changes in existing contracts, or what those demands would be except as specified in the letter of December 27, 1948, * * *.

\* \* \* \* \*

"No other strike vote was taken by the union in reference to this matter.

\* \* \* \* \*

"16. That the union did not at any time when they served notice on the plaintiff of the changes they wished made in the contract of 1948 ask for a termination of the contract or that the plaintiff be required to enter into a contract with the Iron Range Building Trades Council."

As a matter of law, based upon its findings, the court concluded:

"1. That on and prior to August 8, 1949, the agreement between the plaintiff and the Carpenters Local No. 1490 had not been terminated and was in full force and effect.

"2. That the strike vote of the members of the Carpenters Local No. 1490 taken on January 7, 1949, was illegal and void.

"3. That the action of the carpenters in walking off the job of plaintiff was with the consent and acquiescence of the union

and was a violation of the terms of the contract and an unfair labor practice.

"4. That plaintiff is entitled to a temporary injunction restraining the defendants and all of them from in any way interfering with or preventing or encouraging any of the members of the Carpenters Local No. 1490 from going back to work for the plaintiff."

In a memorandum attached to the findings and conclusions, the trial court stated:

"The court has the right to issue a temporary injunction in this case only for a violation of Section 179.11; that is, if the defendants have committed some unfair labor practice.

"The contract itself provides that it shall continue in full force and effect from year to year unless written notice is given that the contract be amended or terminated.

"The defendants contend that when notice is given demanding changes in the contract that it is then terminated. I cannot agree with this contention. The notice to amend the terms of the contract presupposes the existence of a contract and only asks that certain provisions be changed and that the balance of the contract be unaltered.

* * * * *

"The union could not terminate the contract except upon written notice to terminate or failure of the parties to get together on the changes proposed by the union. The strike vote of the members of the union provided for in the statute before a strike can be called means a strike vote on the issues involved. It must be a vote wherein the members know what differences exist between the union and the employer. It must be a vote taken intelligently with knowledge of all of the facts. Before voting for a strike the union members are entitled to know what they are striking for, they are entitled to know what the employer offers and what the differences are between them. If the employer is willing to accede to the principal demands the members are en-

titled to know that before they go out on a strike or try to enforce some less important ones. Here the authority to call a strike was voted solely for the purpose of strengthening the position of the labor representatives and not on the basis of differences between the parties. At the time the strike vote was taken no demands had been made on the employer and no counter-proposals made by the employer.

\* \* \* \* \*

"If the court's conclusion that there was an existing contract or the strike vote was illegal is correct, then defendants' walkout constituted an unlawful labor practice under Section 179.11, subd. 1 or 8. \* \* \*

\* \* \* \* \*

"The action of the carpenters in walking off the job on August 8 seems to me to constitute a strike under the above definition. If the court's conclusion is right, then the union should not in any way interfere with or discourage the union carpenters to go back to work for the plaintiff. It cannot compel them so to do."

On appeal, it is the contention of defendants (1) that there was no unfair labor practice under § 179.11(1), since the notices delivered by Local No. 1490, which demanded substantial amendments to the contract, were in strict compliance with Article II thereof, so that the failure of the parties to agree thereon prior to March 31, 1949, the termination date of the contract, effectively terminated the contract on that date; (2) that the acts of defendants and members of Local No. 1490 in terminating the latters' employment on August 8, 1949, did not constitute a strike; and (3) that, in any event, the conduct of defendants throughout was in strict compliance with § 179.11(8), relative to strike votes, and § 179.06, relative to strike notices and procedure.

■ Section 179.11 provides:

"It shall be an unfair labor practice:

"(1) For any employee or labor organization to institute a strike if such strike is a violation of any valid collective agree-

ment between any employer and his employees or labor organization and the employer is, at the time, in good faith complying with the provisions of the agreement, * * *;

\* \* \* \* \*

"(8) Unless the strike has been approved by a majority vote of the voting employees in a collective bargaining unit of the employees of an employer or association of employers against whom such strike is primarily directed, for any person or labor organization to cooperate in engaging in, promoting or inducing a strike. Such vote shall be taken by secret ballot at an election called by the collective bargaining agent for the unit, and reasonable notice shall be given to all employees in the collective bargaining unit of the time and place of election."

The restraining order here is based upon the trial court's conclusion that the agreement of May 17, 1948, was still in full force and effect on August 8, 1948, and that therefore defendants' actions in inducing the members of Local No. 1490 to quit plaintiff's employ on that date constituted an unfair labor practice under the statute quoted.

We are of the opinion that the contract of May 17, 1948, was not in effect on August 8, 1949, but terminated upon failure of the parties to agree upon the substantial amendments thereto, which had been timely demanded and proposed by Local No. 1490. The contract specifically provides that it shall continue on a year-to-year basis after March 31, 1949, "unless written notice is given by either party to the other on or before 90 days prior to the annual expiration date, demanding that the agreement be *amended* or terminated." (Italics supplied.) It further provides that "If the notice is to *amend*, then either party giving such notice shall serve the proposed amendments on the other party at least 30 days prior to the next ensuing expiration date." (Italics supplied.)

The trial court found, and the evidence clearly establishes, that the demand for amendments by Local No. 1490 was made at least

90 days before the expiration date of the contract, and that written proposals thereof were delivered to plaintiff at least 30 days prior thereto, in full compliance with the contract provisions; and that by March 31, 1949, the expiration date, no agreement had been reached with respect thereto. It must follow that, under its definite terms, the agreement terminated on that date. To hold otherwise would mean that agreements with like renewal clauses would continue from year to year indefinitely if, by the expiration date thereof, the parties thereto were unable to agree upon proposed amendments and, in the absence of a desire to fully terminate such agreements, had failed to serve notice of termination thereof.

We have failed to find any court decisions interpreting termination provisions of this type, which frequently appear in labor contracts. However, the National Labor Relations Board on numerous occasions has similarly construed like provisions in such contracts. The rule there followed is that, if the proposed amendments are substantial and cannot be agreed upon by the expiration date, then the automatic renewal provision becomes ineffective and the contract terminates on such date, provided timely notice of the proposed amendments has been given. See, In re American Woolen Co. 57 N. L. R. B. 647; In re Air Reduction Sales Co. 58 N. L. R. B. 522; In re Great Bear Logging Co. 59 N. L. R. B. 701; In re John Wood Mfg. Co. Inc. 61 N. L. R. B. 846.

In the American Woolen Co. case, *supra,* the board stated (57 N. L. R. B. 648):

"On February 22, 1943, the Company and the C. I. O. executed a collective bargaining agreement which provided * * * for a 1-year term commencing from the date of execution, and for yearly renewals thereafter in the absence of notice of termination given by one party to the other 60 days prior to any termination date. On December 1, 1943, the C. I. O. addressed a letter to the Company requesting a meeting for the purpose of discussing changes in the existing contract. * * * On January 19, 1944, * * * the C. I. O.

presented its request for changes in the current agreement, which the Company refused to grant. * * * The modifications proposed * * * included changes in the wage structure and the maintenance-of-membership clauses, a request for a second shift bonus, for group insurance, for the establishment of a minimum wage of 65 cents per hour, and for an enlargement of the vacation clause.

"The C. I. O. contends that these proposed changes were merely demands for modifications of an existing contract, that no notice of termination of the contract was given, and that the contract was renewed * * *. We do not agree. The proposed modifications were substantial. Upon refusal of the Company to accede to its demands the C. I. O. caused the dispute to be certified to the National War Labor Board for the express purpose of having that agency rewrite the contract so as to include the proposed changes. * * * In these circumstances, we are of the opinion that the C. I. O.'s letter of December 1, 1943, was a notice of termination of the existing contract and a request for the execution of a new one."

In the Air Reduction Sales Co. case, *supra*, the board stated (58 N. L. R. B. 524):

"* * * These parties executed a new agreement for a term of 1 year, effective June 17, 1943, * * * providing that it was to 'continue from year to year thereafter unless terminated by written notice from either party to the other, given not less than 90 days prior to the annual expiration date.' * * *

\* \* \* \* \*

"On March 14 and 15, 1944, the Teamsters sent letters to the Company with respect to each of the existing agreements which read as follows:

"Our agreement which expires ———— [June 17, 1944] provides for a notification 90 days prior to expiration date if any change is desired. Therefore, we are taking this opportunity to notify you that we desire a change in our contract upon its expiration.

"These letters were served in timely fashion, and, in our opinion, stayed the operation of the automatic renewal clauses contained in the existing agreements. The letters, we find, effectively terminated the distribution division contract as of June 17, 1944, * * *."

In the Great Bear Logging Co. case, *supra*, the board stated (59 N. L. R. B. 702):

"* * * The contract was to terminate on April 1, 1941, and was to remain in effect from year to year thereafter unless a written notice to terminate or modify its terms was given not less than 60 days prior to April 1, of any contract year; * * *.

\* \* \* \* \*

"The IWA, the intervenor herein, claims that there was no termination of the existing contract and that its demands were merely for modifications thereof. The Board has held that a request for modifications much less in scope than those asked for in the instant case was substantial enough to serve as a notice of contract termination rather than merely a notice of a desire for modification. In any event, a request for modifications substantial enough to require extended negotiations between the parties, as was here required, shows an election to terminate." (Citing In re American Woolen Co. 57 N. L. R. B. 647, and In re Purepac Corp. 55 N. L. R. B. 1386.)

In the John Wood Mfg. Co. case, *supra*, the contract contained an automatic renewal clause requiring either party to give notice at least 30 days prior to the yearly expiration date. The board stated (61 N. L. R. B. 848):

"* * * We are of the opinion, however, that the A. F. L.'s request for substantial modifications in the contract was equivalent to notice of termination and, as such, it prevented operation of the automatic renewal clause. The statement by the A. F. L. * * * that the contract was to remain in effect was unilateral and, so far as the record shows, not agreed to by the Company."

■ In the instant case, as previously stated, Local No. 1490 gave timely written demand for the proposed amendments, which involved substantial matters, such as those pertaining to wages, vacations, and a welfare fund. Under the terms of the contract, failure of the parties to agree on such amendments prior to the expiration date effectively terminated the contract on that date. It follows that on August 8, 1949, when members of Local No. 1490 left plaintiff's employ, there was no valid collective agreement in existence.

■ The trial court further concluded:

"That the strike vote of the members of the Carpenters Local No. 1490 taken on January 7, 1949, was illegal and void."

It is defendants' position that, since the termination of their employment on August 8, 1949, was of a *permanent* nature, their acts did not constitute a strike, under this court's construction (The Dayton Co. v. Carpet, Linoleum, etc., Union, 229 Minn. 87, 39 N. W. [2d] 183) of § 179.01, subd. 8, which defines a strike as follows:

" 'Strike' means the *temporary* stoppage of work by the concerted action of two or more employees as a result of a labor dispute." (Italics supplied.)

Since we are of the opinion that the strike vote taken on January 7, 1949, was in full compliance with § 179.11(8), it will be unnecessary for us to pass on this question.

In its memorandum, as above indicated, the court gave as a basis for its conclusion that the strike vote was void under § 179.11(8) its belief that under said section the legislature intended that the strike vote provided for therein must "be a vote wherein the members know what differences exist between the union and the employer. * * * taken intelligently with knowledge of all of the facts," and because "Here the authority to call a strike was voted solely for the purpose of strengthening the position of the labor representatives and not on the basis of dif-

ferences between the parties. * * * no demands had been made on the employer and no counterproposals made by the employer."

Section 179.11(8), above quoted, contains no such provisions. Therein it is specified only that a strike be approved by a majority vote of the voting employes in the collective bargaining unit involved, by secret ballot at an election called by the collective bargaining agent for the unit, upon reasonable notice to all members of the time and place of such election. There are no further prerequisites set forth in the statute. It is silent as to the time when the vote shall be taken, except that it shall be before a strike may be induced, promoted, or called. There is nothing therein to the effect that either the election notice or the vote taken shall be upon specific issues, proposals, counterproposals, or anything of a like nature. Had the legislature intended anything further, it would have used apt language to express the same. See, 28 Minn. L. Rev. 66, editorial note on Minnesota Labor Relations Acts. Both parties accepted Local No. 1490 as the bargaining representative for all carpenters in the Virginia area. Section 179.11(8) contemplates that a collective bargaining unit may consist of the employes of several employers, and that as such it may negotiate with either a particular employer or an association of employers so long as it is the designated representative of the employes of the particular employer or group of employers involved.

It is clear that in its January 7, 1949, meeting Local No. 1490 fully complied with § 179.11(8). Its letter of December 27, 1948, to plaintiff and all contractors in the area indicates that certain issues were under consideration. These included "mileage to jobs out of town," "wage raise," "vacation plan," and "welfare fund." At its January 7, 1949, meeting, it gave its representatives the right to call a strike against all the contractors or any of them if they deemed it advisable in the event the parties subsequently failed to agree on issues under consideration. This action, as defendants' witnesses frankly admitted, was designed to give the bargaining agents additional effectiveness and prevent subsequent

delays if a strike was ultimately deemed essential. We find no statutory prohibition against the procedure followed either in § 179.11(8) or otherwise.

■ Likewise, it is clear that Local No. 1490 complied with the provisions of § 179.06, which provides:

"When any employee, * * * or representative of employees, * * * shall desire to * * * make any change in any existing agreement, or shall desire any changes in the rates of pay, rules or working conditions in any place of employment, it shall give written notice to the employer of its demand, * * *. If no agreement is reached at the expiration of ten days after service of such notice, any employees, * * * may give notice of intention to strike * * * upon the labor conciliator and the other parties to the labor dispute at least ten days before the strike * * * is to become effective. Unless the strike * * * is commenced within 90 days from the date of service of the notice upon the labor conciliator, it shall be unlawful for any of the parties to institute or aid in the conduct of a strike * * * without serving a new notice in the manner prescribed * * *."

Here, proper written notice of demands for amendments to the contract was delivered to the employer. Conferences were held in connection therewith. It was more than 10 days thereafter before notice of intention to strike was given to plaintiff and the labor conciliator. The prescribed meetings were held with the latter. The required strike vote had been taken, and final termination of employment did not occur later than 90 days from the service of notice upon the conciliator. The contract having terminated and full compliance having been made with §§ 179.11(1 and 8) and 179.06, we find no unfair labor practice within the statutory definitions thereof. It follows that the court erred in holding that such practices had been committed by defendants.

■ Plaintiff has appealed from the trial court's order denying his motion for additional findings of fact and conclusions of law. In substance, this is an order denying a motion for amended

findings and is nonappealable. Plaintiff's appeal is therefore dismissed. Rogers v. Hedemark, 70 Minn. 441, 73 N. W. 252; Louis F. Dow Co. v. Bittner, 185 Minn. 499, 241 N. W. 569; Sheffield v. Clifford, 186 Minn. 300, 243 N. W. 129; Droege v. Brockmeyer, 214 Minn. 182, 7 N. W. (2d) 538; Motzko v. Motzko, 222 Minn. 36, 22 N. W. (2d) 920.

The order from which defendants appealed is reversed. Plaintiff's appeal is dismissed.

So ordered.

KNUTSON, JUSTICE (concurring specially).

I concur in the result. It appears to me that the contract between the employer and the employes had terminated and that the evidence does not establish that there was a strike. The employes, having no contract, simply quit their work and sought employment elsewhere. The court's decision is based on the finding that there was a violation of an existing contract, which constituted an unfair labor practice. If there was no contract and no strike, the basis for the court's injunction failed. It may not have been necessary to pass upon the question whether the vote authorizing a strike was legal under our statute, in view of the fact that we hold that there was no contract and no strike. If we are to pass on it, I cannot agree with the majority opinion that the strike vote taken complies with our statute. Under § 179.11(8), a strike, to be lawful, must be approved "by a majority vote of the voting employees in a collective bargaining unit *of the employees of an employer* or association of employers *against whom such strike is primarily directed.*" (Italics supplied.) The vote shown by the record in this case was not taken among the employes of the employer against whom the strike was directed at all. There never has been a vote taken among the employes of the bargaining unit involved.