JULIUS I. EDELSTEIN v. DULUTH, MISSABE & IRON RANGE RAILWAY COMPANY.
JOSEPH GABARDI v. SAME.
MIKE REPAC v. SAME.
SYSTEM FEDERATION NO. 71 RAILWAY EMPLOYES' DEPARTMENT AMERICAN FEDERATION OF LABOR, INTERVENER.[1]

March 5, 1948.

Nos. 34,418, 34,419, 34,420, 34,437, 34,438, 34,439.

[1]Reported in 31 N. W. (2d) 465.

510

*Franklin B. Stevens* and *William H. Crago, Jr.,* for appellant Duluth, Missabe & Iron Range Railway Company.

*Richard R. Lyman, Mulholland, Robie & McEwen, Thomas Vennum,* and *Vennum, Neville & Wright,* for appellant intervener.

*James P. Crea,* for respondents.

PETERSON, JUSTICE.

In these cases, plaintiffs sued defendant railway company as their employer to recover damages for wrongfully discharging them in violation of employment contracts between the parties. Decision below was to the effect that the so-called discharge was void; that plaintiffs were employes of defendant by virtue of their seniority rights under two contracts of employment; that one of these was negotiated by the intervener, System Federation No. 71 of the Railway Employes' Department of the American Federation of Labor, as the bargaining representative of all defendant's em-

ployes; that the other was an individual contract between defendant and plaintiffs for seasonal employment; and that plaintiffs as defendant's employes were entitled to their wages so long as defendant failed to employ them at available work and to vacation pay provided for under the contract. Defendant and intervener appeal.

The questions raised on the appeal are:

(1) Whether, where there is no allegation or admission that a railroad is engaged in interstate commerce, but there was evidence showing that its lines extend interstate and the parties have proceeded upon the assumption that their rights are governed by the Railway Labor Act (45 USCA, §§ 151-188), this court should decide the appeal upon the theory on which it was decided below;

(2) Whether employes of a railroad have seniority rights except by contract;

(3) Whether the particular contract here involved providing for seniority rights made it mandatory for an employe in the operation of the seniority rights plan to accept employment at any point on the division where the employe was employed, and, if so, whether refusal of the employe to accept such employment involved as a consequence the loss of his right to work;

(4) Whether a labor organization as the statutory bargaining representative of the employes of a railroad may bargain as to seniority rights of employes;

(5) Whether, if the preceding question is answered in the affirmative, an employment contract entered into by a railroad and a labor organization as the statutory bargaining representative of the employes

(a) May be altered, amended, or interpreted by negotiation between the railroad and the statutory bargaining representative;

(b) is binding upon employes not shown to be members of the labor organization designated as statutory bargaining representative; and

(c) excludes individual contracts between the railroad and its employes inconsistent with the contract between the railroad and the statutory bargaining representative;

(6)   Whether the courts have jurisdiction of an action brought by an employe to enforce rights under a contract entered into by a railroad and the statutory bargaining representative where the employe has not exhausted the administrative procedures provided in the Railway Labor Act, 45 USCA, § 151, *et seq.;*

(7)   Whether this court should consider for the first time on appeal the question not raised below whether an employe may maintain an action without first exhausting his remedies, if any, under the provisions of the contract relative to the settlement of grievances by negotiation between representatives of the railroad and the labor organization;

(8)   Whether, where plaintiffs at the time they were notified that their service with defendant was automatically terminated because of their failure to accept jobs as required by the seniority plan made part of the contract of employment failed to invoke the protection and benefits of rule 22(f), requiring defendant to give employes notice of layoff, of rule 28(d), requiring defendant to grant employes a hearing in case of dismissal for cause, of rule 14, requiring defendant to bulletin open jobs, and of rules 109 and 112, requiring any interpretation of rules to be made by a representative of defendant and the general committee of the employes' statutory bargaining representative, and whether, where plaintiffs brought suit upon the theory that their services with defendant had been terminated, they can invoke the protection and benefit of those rules; and

(9)   Whether plaintiffs after termination of their employment were entitled to vacations with pay or payment in lieu thereof, which they had earned, notwithstanding a provision in a supplemental contract that no employe shall be entitled to such an allowance if his employment "has terminated prior to the taking of his vacation."

Intervener as the statutory bargaining representative under the Railway Labor Act of numerous railway crafts, including carmen, negotiated a contract with defendant effective July 1, 1939, governing hours of labor, pay, working conditions, seniority rights settle-

ment of disputes, and other matters. The provisions of the contract are referred to therein as "rules," which are numbered.

Rule 18 provides generally that employes may not absent themselves from work without the permission of their foreman or for certain causes.

The matter of seniority rights in employment received detailed and painstaking consideration. Prior to the effective date of the contract (July 1, 1939), defendant's employes had seniority upon a local or point basis. For example, employes at Hibbing, Proctor, and every other point had seniority where they worked without regard to defendant's employes at other points. At the instance of defendant's employes, seniority was changed from point to railroad-division basis by including in the contract rule 24, which expressly provides that seniority shall be upon a division basis. Defendant's lines consist of two divisions—the Missabe and the Iron Range. Under the contract, the seniority rules affect alike all employes on a division, regardless of the point where they may be employed. Employes at Hibbing, Proctor, and other points on the same division are governed by the same rules of seniority. An exception was made as to certain employes at outlying points who had acquired seniority rights at the effective date of the contract.

Rule 14, so far as here pertinent, provides that when new positions are created or vacancies occur seniority will govern in filling them; that the railroad shall post bulletins at least five days before filling a vacant position so as to enable employes receiving a lesser rate of pay to apply for it; that a copy of the application shall be given to the local chairman of the labor organization representing the craft to which the position belongs; that an employe exercising seniority rights shall lose such rights to the job he left; that if he fails to qualify for a new position he will have to take whatever position in his craft is open; and that "If no bids are received by the Railway Company on any positions bulletined under this rule, the junior employee of the craft or class *will be required* to fill the position." (Italics supplied.) A further provision requires employes to exercise seniority rights without expense to the railroad.

Rule 22 provides that in reduction of forces seniority shall govern; that in restoration of forces employes, including laid off and furloughed men, will be restored to service in accordance with their seniority; and that "(d) In reduction of forces, employees who so desire may waive their seniority rights to a junior employee in point of service. Such waiver shall be in writing and a copy furnished local Committee." Rule 44 provides that an employe may not exercise seniority "to relieve younger employees," except when the senior "finds himself displaced or his job abolished," and that employes engaged in seasonal positions put on at the beginning and taken off at the close of the ore-carrying season shall return to the position held by them when they accepted the seasonal positions.

On October 4, 1943, plaintiff Edelstein was employed as an oiler and brasser, which under the contract is a type of carmen craft service. He worked as such in the Hibbing district until the end of the 1943 ore-carrying season. On April 11, 1944, plaintiffs Gabardi and Repac were hired as oilers and brassers. All three plaintiffs worked as such in the Hibbing district, where they resided, during the entire ore-carrying seasons of 1944 and 1945. It is practically undisputed that they had an agreement or understanding with defendant's employe who hired them that they would work only in the Hibbing district during the ore-carrying season, which according to the evidence was from about April 1 to about November 1 each year, and that they would not be required to take winter work at other points. Immediately after the close of the ore-carrying seasons in 1943 and 1944, Edelstein executed waivers of his right to winter work at Proctor, the division point of defendant's Missabe division. Hibbing is about 70 miles from Proctor. At the close of the 1944 ore-carrying season, plaintiffs Gabardi and Repac executed similar waivers of employment at Proctor during the winter season. Prior to the close of the 1945 ore-carrying season, defendant gave actual notice to plaintiffs through other employes that they would be required to accept work at Proctor during the 1945-1946 winter season, and that because no other employes would be available to take the jobs which then would be open for them they would not be

permitted to waive work at Proctor during such season. All three of them refused to accept work at Proctor. Whereupon defendant notified them that their names had been removed from the seniority list in accordance with the terms of the contract between the railroad and intervener; that they had automatically severed their employe relationship with the railroad; and that they were not entitled to vacation pay for their 1944 services.

When defendant notified plaintiffs orally that they would have to accept work at Proctor during the winter, no point was made by plaintiffs or by any labor organization or committee thereof that plaintiffs had not received layoff notice as required by rule 22(f); that they were entitled to a hearing as in case of dismissal as provided by rule 28(d); that defendant was required by rule 14 to bulletin the job; or that defendant by requiring plaintiffs to work at Proctor during the winter was making an interpretation of the seniority rules without first referring the matter to a committee as required by rules 109 and 112. Neither did plaintiffs nor any organization or committee invoke the application of such rules. As a matter of fact, there were no other employes available for these jobs, and consequently bulletining would have been a useless procedure. Plaintiffs not only seemed to think that refusal to take work at Proctor would automatically terminate their job rights, but they brought these actions upon the theory that their services with defendant had been terminated.

During the spring and summer of 1945—that is, after plaintiffs had been employed by defendant—intervener's representatives presented a grievance to defendant based upon the fact that defendant had permitted certain employes on the Iron Range division who lived at Biwabik to waive winter work at Two Harbors, the division point. Defendant suggested the adoption of a rule permitting employes to waive work and retain seniority status as of the date of the waiver. Intervener refused to agree to the suggestion. At a convention held on July 15, 1945, intervener adopted a resolution the effect of which was that it interpreted the contract as meaning that seniority rules should have the same division-wide application

as if adopted for a single point, and that an employe would have to take a position at any point to which his seniority entitled him or lose his job rights. On August 6, 1945, defendant agreed to the interpretation and indicated that it understood that thereby it was not precluded from granting leaves of absence under rule 17 of the original contract. Rule 17 provides:

"When the requirements of the service will permit, employees, on request, will be granted a leave of absence for a limited time if approved by the Company and proper employees' Committee.

"Except for physical disability, leave of absence in excess of six (6) months shall not be granted except by mutual agreement between the Company and the proper Committee."

A supplemental agreement effective as of December 17, 1941, provided that an employe should be entitled each year to a vacation with pay, or in lieu thereof payment therefor, if he rendered compensated service for 160 days during the preceding calendar year; and that: "8. No vacation with pay or payment in lieu thereof will be due an employee whose employment relation with a Carrier has terminated prior to the taking of his vacation, except that employees retiring under the provisions of the Railroad Retirement Act shall receive payment for vacation due." The trial court found each plaintiff had earned a vacation during 1944 and 1945 for which he was entitled to vacation pay and held that they were entitled to recover the amount thereof. This was done upon the theory that plaintiffs still were employes of defendant.

■ Our rule and that of the Supreme Court of the United States is that the theory upon which a case is tried becomes the law of the case and must be adhered to on appeal. Allen v. Central Motors, Inc. 204 Minn. 295, 283 N. W. 490; M. & St. L. R. Co. v. Winters, 242 U. S. 353, 37 S. Ct. 170, 61 L. ed. 358, Ann. Cas. 1918B, 54 (affirming 131 Minn. 496, 155 N. W. 1103). In the M. & St. L. R. Co. case, there was neither allegation nor proof that the rights of the parties were governed by the federal employers' liability act, but there were references to that fact upon the trial, and the case was

tried upon the theory that the act applied. It was held that the theory adopted by the parties at the trial governed on appeal. Here, there was some evidence consisting of a plat showing that defendant's lines extended interstate. The case was tried not only upon the theory that the railroad employes' labor organization was their statutory bargaining representative under the Railway Labor Act, but also that the act governed as to all matters arising under the contract. We decide the case on appeal upon the same theory that it was tried and decided below.

■ Seniority rights of employes to employment arise only out of contract or statute. Trailmobile Co. v. Whirls, 331 U. S. 40, 67 S. Ct. 982, 91 L. ed. 1328, note 21, citing Casey v. Brotherhood, etc., 197 Minn. 189, 266 N. W. 737. An employe has no inherent right to seniority in service. Absent statute, as here, employes' seniority rights are purely contractual. Casey v. Brotherhood, etc., *supra.* Here, the only provisions for seniority rights are contained in the employment contract between defendant and the statutory bargaining representative of the employes. Consequently, employes' seniority rights are governed thereby.

■ While the contract is long and somewhat complicated, it is reasonably clear that the parties intended that the employes covered by it should perform so far as they were able whatever work defendant had; that, in hiring, senior employes should have first right to jobs, and that in laying off they should be the last to go. In order to make the system work, the publicizing of jobs and other matters was required, to the end that those entitled to seniority rights might assert them. The provision of rule 22(d) permitting employes, when there is a reduction of forces, to "waive their seniority rights to a junior employee," by its terms permits such waiver only where there is a junior employe available to fill the job with respect to which the senior employe has waived his rights as such. In other words, there can be no general waiver; a waiver must be in favor of a junior employe. An employe is not entitled to a leave of absence as a matter of right, because rule 17 expressly states that a leave of absence will be granted only when the requirements of the service

will permit and both defendant and the proper employes' committee approve such action. The provision of rule 14 to the effect that if no "bids" for a position are received by defendant the junior employe of the craft or class "will be required" to fill the position manifests by mandatory language a meaning that a junior employe must accept such position—that he shall have no discretion in the matter. Rule 44 relates to the right of a senior in exercising his seniority right to take the job of a junior in certain cases, a question not involved here. Here, the question was whether a junior *must* take a junior's job that was open to him.

Construing all the provisions together, as should be done in the case of any writing, the meaning seems clear that in filling positions employes shall move according to seniority, except where a senior employe waives his right to a junior employe available to fill the position; that seniority rights cannot be waived except in favor of a junior available to take the job with respect to which the senior's rights are waived; that an employe is not entitled to a leave of absence as of right, but only in the discretion of defendant and the employes' committee; that where there is a position to be filled the junior employe on the seniority roster or list must accept the position or lose his seniority rights; and that, because under rule 24 seniority rights are division-wide, a junior employe at any point on a division may be required under seniority rules to fill a position at any other point on the division or lose his right to a job altogether. As applied here, plaintiffs had seniority rights not in the Hibbing district, but over the whole Missabe division; and when winter jobs became available at Proctor with no junior employes to fill them plaintiffs were required to take those jobs or lose their seniority rights. By refusing to accept jobs at Proctor, they lost their job rights. By their conduct at the time and by the theory of these actions, they admit the fact to be that their employment has been terminated. True, the exercise of seniority rights involves hardship upon plaintiffs. They would have had to live in Proctor in order to work there, because it was impracticable for them to commute daily the 70 miles or so between their homes in Hibbing and

their work in Proctor. Such hardship was contemplated by the employes when they made provision in their employment contract for seniority rights on a division rather than on a point basis.

Intervener's interpretation of the seniority rights provisions of the employment contract and defendant's acquiescence therein during July and August 1945 made it clear, if it was not already so, that seniority rights were division-wide and that employes not only could not waive such rights except to a junior employe, but also that if they refused to accept positions which they were required to accept under seniority rules they would as a consequence lose their job rights altogether.

■ In cases involving rights arising under a federal statute, the decisions of the Supreme Court of the United States are controlling. Glover v. Minneapolis Building Trades Council, 215 Minn. 533, 10 N. W. (2d) 481, 147 A. L. R. 1071. So it is here, because the instant case involves questions arising under a federal statute, the Railway Labor Act. The Railway Labor Act (45 USCA, §§ 151, 152) vests in an employes' statutory bargaining representative *exclusive* authority to contract prospectively with their railroad employer with reference to rates of pay, rules, and working conditions. Elgin, Joliet & Eastern Ry. Co. v. Burley, 325 U. S. 711, 65 S. Ct. 1282, 89 L. ed. 1886, 327 U. S. 661, 66 S. Ct. 721, 90 L. ed. 928.

■ Authority of an employes' statutory bargaining representative to enter into contracts concerning rates of pay, rules, and working conditions includes as incidental thereto authority to contract prospectively with the railroad .with reference to seniority rights of the members of the craft represented by the bargaining representative. Lewellyn v. Fleming (10 Cir.) 154 F. (2d) 211. The case of Steele v. Louisville & N. R. Co. 323 U. S. 192, 65 S. Ct. 226, 89 L. ed. 173, in effect so holds. In Casey v. Brotherhood, etc., 197 Minn. 189, 192, 266 N. W. 737, 738, we held that such bargaining authority includes authority to contract with reference to seniority and said:

"* * * Aside from contract, there is no inherent or fundamental right to preference by virtue of seniority in service. Therefore the

matter of seniority or place upon the seniority list is subject to the contract between the parties. All seniority rights are held by the railroad employes by virtue of the contract which has been made in their behalf with the railroad company by the brotherhood."

■ An employment contract between a railroad and its employes' statutory bargaining representative containing provisions for seniority rights of employes may by agreement operating prospectively not only be amended and interpreted, but also entirely superseded. The conclusion follows from the facts that a contract of employment between such parties may be amended, interpreted, or superseded, and that seniority rights, being a matter pertaining to rules and working conditions, are contractual. In the Elgin, Joliet & Eastern Ry. Co. case, *supra,* speaking of the power to contract concerning rates of pay, rules, and working conditions, the court said (325 U. S. 739, 65 S. Ct. 1297, 89 L. ed. 1903) :

"* * * It includes the power to make a new agreement settling for the future a dispute concerning the coverage or meaning of a preëxisting collective agreement. For the collective bargaining power is not exhausted by being once exercised; it covers changing the terms of an existing agreement as well as making one in the first place."

In the Casey case, *supra,* in pointing out that changes in seniority rights may be made by contract between a railroad and a union, we said (197 Minn. 192, 266 N. W. 738) :

"* * * It was competent for the brotherhood to contract in behalf of its members that under certain conditions there should be a readjustment of seniority rights and a reranking of a member upon the seniority list."

And where by such a contract such a change is made, as said in Donovan v. Travers, 285 Mass. 167, 173, 188 N. E. 705, 707:

"* * * The employee stands no higher than the union. If it modifies the agreement with the employer, the employee must acquiesce."

Parties to a contract may agree as to its meaning. Park Const. Co. v. Independent School Dist. 216 Minn. 27, 11 N. W. (2d) 649. That is what the interpretation here amounted to. It makes no difference here whether under the seniority rules set forth in the employment contract unexplained by the interpretation of July and August 1945 plaintiffs were required to take work at Proctor, or whether the interpretation added such a requirement for the reason that plaintiffs refused to accept work at Proctor after the interpretation had been made, and consequently that as to them the interpretation operated prospectively.

In the Elgin, Joliet & Eastern Ry. Co. case, the court drew a distinction between making a contract covering rates of pay, rules, and working conditions operating prospectively and accrued claims arising under a contract already in operation. Plaintiffs rely on certain language used in that case with respect to accrued claims, which clearly has no application here, for the reason, as has been pointed out, that seniority rules are subject to change so far as prospective application is concerned, and such a change had been made before plaintiffs were required under the rules to take winter work at Proctor.

■ Under the Railway Labor Act, the contract between defendant and the employes' statutory bargaining representative was binding on plaintiffs, regardless of whether they were members of the carmen's union or any other constituent body belonging to the employes' statutory bargaining representative. As said in the Steele case, *supra* (323 U. S. 200, 65 S. Ct. 231, 89 L. ed. 182):

"The labor organization chosen to be the representative of the craft or class of employees is thus chosen to represent all of its members, regardless of their union affiliations or want of them."

The rule of the Steele case was followed and applied in Lewellyn v. Fleming, *supra*.

■ An individual agreement between a railroad and an employe in conflict with an employment contract between the railroad and its employes' statutory bargaining representative is void. Where, as

here, there is a collectively bargained contract, the situation is the same as it is in similar cases under the National Labor Relations Act. In such a case, J. I. Case Co. v. N. L. R. B. 321 U. S. 332, 335, 64 S. Ct. 576, 579, 88 L. ed. 762, 766, the court said:

"* * * the terms of the employment already have been traded out. There is little left to individual agreement except the act of hiring."

In the Steele case, *supra,* the court said (323 U. S. 200, 65 S. Ct. 231, 89 L. ed. 182) :

"Section 2, Second [of the Railway Labor Act], requiring carriers to bargain with the representative so chosen, operates to exclude any other from representing a craft. * * * The minority members of a craft are thus deprived by the statute of the right, which they would otherwise possess, to choose a representative of their own, and its members cannot bargain individually on behalf of themselves as to matters which are properly the subject of collective bargaining."

And as said in Order of Railroad Telegraphers v. Railway Exp. Agency, Inc. 321 U. S. 342, 346, 64 S. Ct. 582, 585, 88 L. ed. 788, 791:

"* * * If this [that employer and employe had right to make individual contracts] were true, statutes requiring collective bargaining would have little substance, for what was made collectively could be promptly unmade individually."

Hence, assuming as we must that plaintiffs entered into individual contracts with defendant under which they were not required to work at Proctor during the winter season, such contracts are void as being in conflict with the seniority provisions of the employment contract negotiated and concluded with defendant by the employes' statutory bargaining representative.

■ The question whether the court lacks jurisdiction of the subject matter of the action because of the failure of the parties to exhaust the administrative remedies provided in the Railway Labor Act for the hearing of plaintiffs' grievances that they had been wrongfully discharged as employes is set at rest by the decision

in Moore v. Illinois Cent. R. Co. 312 U. S. 630, 61 S. Ct. 754, 85 L. ed. 1089, holding that the exhaustion of such remedies is not a prerequisite to bringing an action for a determination of an employe's rights. There the court said (312 U. S. 634, 61 S. Ct. 756, 85 L. ed. 1092) :

"But respondent says that there is another reason why the judgment in its favor should be sustained. This reason, according to respondent, is that both the District Court and the Circuit Court of Appeals erred in failing to hold that Moore's suit was prematurely brought because of his failure to exhaust the administrative remedies granted him by the Railway Labor Act, 44 Stat. 577, as amended, 48 Stat. 1185, 45 U.S.C. § 151, *et seq.* But we find nothing in that Act which purports to take away from the courts the jurisdiction to determine a controversy over a wrongful discharge or to make an administrative finding a prerequisite to filing a suit in court."

■ The suggestion made for the first time on the appeal that plaintiffs cannot maintain these actions for failure to exhaust contractual remedies will not be considered, under the well-settled rule that points not raised in the lower court and raised for the first time on appeal will not be considered.

■ Because all the parties ignored the provisions of rule 22(f) requiring defendant to give employes notice of layoff, of rule 28(d) requiring defendant to grant employes a hearing in case of dismissal for cause, of rule 14 requiring defendant to bulletin open jobs, and of rules 109 and 112 relative to making interpretations of rules, and because plaintiffs proceeded to suit upon the supposition that they were in fact discharged by defendant, we think that all parties have waived the rules mentioned. In that view it is not necessary to decide whether the rules have the meaning or the application for which plaintiffs contend.

■ Under the supplemental agreement, it is clear that, although an employe may have rendered the requisite service to entitle him to a vacation with pay or in lieu thereof payment therefor, an employe is not entitled thereto if his employment relation with defendant

terminated before he took his vacation. The vacation rights were given only to employes. Former employes are not entitled to them. Termination of plaintiffs' employment also terminated whatever accrued vacation rights they might have had.

Our conclusion is that plaintiffs have no causes of action and that defendant and intervener are entitled to judgment upon the merits.

Reversed with directions to enter judgment for defendant and intervener in accordance with the opinion.

[1]Reported in 31 N. W. (2d) 439.