HALM, ET AL. DOING BUSINESS AS HINCHER MFG. CO. *v.* HINCHER MANUFACTURING COMPANY OF INDIANA, INC.

[No. 18,470. Filed December 4, 1953.]

*Flavian A. Seal* and *Alvin Seal,* of Washington, for appellants.

*Hastings, Allen & Hastings,* of Washington, for appellee.

ROYSE, J.—On December 8, 1951 appellants purchased from appellee the business operated by the latter in Washington, Indiana. The Purchase and Sale Agreement was in writing. Appellants brought this action for damages for breach of that agreement. The demurrer of appellee to the complaint of appellants was sustained. Appellants refused to plead further and the trial court entered judgment that they take nothing and that appellee recover its costs. The error assigned here is that the trial court erred in sustaining the demurrer.

The complaint, after averring their purchase from appellee, made the contract between the parties a part of the complaint. It averred appellants had performed all the conditions of the agreement on their part to be performed. It then made the following averments:

"4. That Defendant has not performed all of the conditions of said Agreement on its part to be performed, in this, to-wit: That rhetorical paragraph 10 of said Agreement reads as follows:

'10. The seller shall pay and discharge any and all indebtedness arising out of its ownership or operation of said manufacturing business up to and including December 31, 1951, and shall furnish the Buyer satisfactory evidence thereof, and shall save and hold the Buyer free from any such claims.'

"5. That at the time of the execution and consummation of said written agreement, the Defendant was operating its said manufacturing business under a written agreement with Upholsters' International Union of North America, A. F. of L., with respect to vacation pay for its employees, Article IX, Section 1, of said agreement reading as follows:

'ARTICLE IX—VACATIONS

'Section 1. All employees of the Company by this Agreement who have been employed for periods herein prescribed ending during the vacation season shall receive vacations and vacation pay as follows:
  After one year's employment...... 5 days
  After five year's employment......10 days

'Section 2. In calculating vacation pay, employees shall be compensated on the basis of their regular hourly rate of wages.
'Section 3. Employees who are discharged for just cause at any time during the contract year shall lose all right to vacation pay. Employees absent because of lay-off, sickness or accident, or a leave of absence for not more than thirty (30) days in each year shall nevertheless receive the

amount of vacation pay to which they would be entitled if working as prescribed herein.

'Section 4. Any employees working during their respective vacation periods, shall in addition to their vacation pay, receive their regular rate of pay. Work during vacation periods shall be only upon voluntary acceptance of employees. All employees shall be paid their vacation pay before the commencement of their respective vacation periods.

'Section 5. The vacation season shall be between June 1st and September 15th, in accordance with the schedule which shall be mutually agreed upon between the Company and the Union.

'Section 6. All vacation periods shall be continuous and no employee shall be compelled to split up his or her vacation.

'Section 7. Employees shall take their vacation at the regular vacation period and in the event they do not have enough seniority to entitle them to vacation pay they shall receive their vacation pay when they have served the required amount of time.'

"6. That said written agreement between Defendant and the Upholsters' International Union was in full force and effect at the time of the execution of the 'Purchase and Sale Agreement' between Plaintiff and Defendant, which was on the 8th day of December, 1951, and is still in full force and effect. That under said agreement with Plaintiff, and by the terms and provisions of its said agreement with said International Union, as set out in rhetorical paragraph 5 above, Defendant was bound and obliged to pay its employees who were eligible to receive vacation pay, the amounts that had accumulated and been earned by such employees during the work year from July, 1951, to July, 1952, which vacation pay was not payable until the end of such work year, but such pay was earned and had accumulated for the six months' time immediately preceding the time Defendant ceased to operate said factory under said agreement

of sale which was on the 31st day of December, 1951.

"7.   That the Defendant, Hincher Manufacturing Company of Indiana, Inc., did not comply with the terms and provisions of its agreement with Plaintiff in this, to-wit: it failed and neglected to notify Plaintiffs of said agreement with the Upholsters' International Union and of the terms thereof with respect to the vacation pay of the employees thereof, and that Plaintiffs had no knowledge of such agreement or vacation pay of such employees until long after they took over the operation of said factory, under their said agreement with Defendant.

"8.   That on the 31st day of December, 1951, there had accumulated vacation pay to the employees of said Company, during the operation of said business by Defendant, the sum of $1,166.10, covering the continuous period of six months immediately prior to the 31st day of December, 1951.

"9.   That further, the Defendant did not comply with the terms and provisions of said agreement of sale with plaintiffs in this, to-wit: that it refused to pay its employees for their vacation periods and refused to acknowledge any liability therefor.

"10.   That such vacation pay did not become due until the employees took their vacations which was usually in July, thus in this case being July, 1952; that upon the arrival of such period to make such payments, by the terms of said agreement of the defendant with the said A. F. of L., the Plaintiff was obliged to pay said employees their vacation pay in order to keep said factory in operation and to retain said employees in such employment; that Plaintiff did pay therefore to said employees said sum of $1,166.10 owing to them by Defendant.

"11.   That at the time Plaintiffs took over the possession and operation of said business, the amount due the employees of said factory on their vacation pay had already accumulated for the six months previous thereto, and while the said factory was being operated by the defendant, and while such employees were employed by the Defendant, and that therefore the Defendant, under its said agreement of sale with Plaintiffs, became liable for

the payment of said sum of $1,166.10 to its employees. .

"12.   That plaintiffs have made frequent demands on Defendant to reimburse Plaintiffs for said amount paid, but such demands have been refused; that by reason thereof Plaintiffs have been damaged in the sum of $1,166.10 with interest thereon at the rate of 6% from July, 1952."

It concluded with a prayer for judgment for $1,166.10 and interest from July 1, 1952.

The memorandum in support of the demurrer, in substance, contended that under the terms of the sales agreement the vacation pay due and payable July 1, 1952 was not a debt of appellee arising out of its ownership and operation of said business; that the provisions of the employment contract with the Union quoted in the complaint do not provide for the accumulation or accrual of vacation pay, nor is there any allegation that such vacation pay became due and payable at any time prior to the annual vacation period in July, 1952. Therefore it cannot be said any such pay had accrued and became a debt of appellee on December 31, 1951; that under the terms of the employment agreement no employee could have collected any amount of vacation pay as of December 31, 1951; that the purchaser of a business who accepts a labor contract in force at the time of the purchase assumes the obligation of providing vacations to the employees as provided in the contract unless such contract contains a provision to the effect that one day or certain other fixed parts of the vacation period shall accrue to the employee each month or at other stated intervals; that there is no allegation in the complaint that failure of appellee to notify appellants of the labor agreement harmed them or had anything to do with creating any liability on the part of appellee; that the allegation

that appellants were obliged to pay said employees their vacation in order to keep their factory in operation and to retain said employees in employment could not change the contractual relations between the parties under the purchase and sale agreement.

The sole question presented by this appeal is: Did the vacation pay due and payable in July, 1952 accrue in part on December 31, 1951 so as to constitute such part a debt of appellee for which it would be liable under the provisions of paragraph 10 of the purchase and sale agreement?

Counsel have stated they have found no court decisions directly in point on the question presented here, nor have we in our independent research.[1]

The contract referred to in rhetorical paragraph 5 of the complaint was between appellee and the Union. Appellants were not parties to this contract and the complaint does not allege they assumed any obligations under it by the terms of the purchase and sale agreement.

We proceed to a consideration of Article 9 of the contract between appellee and the Union to determine if it created an indebtedness as contemplated by Article 10 of the purchase and sale agreement. It seems clear to us that such indebtedness could arise only if the Union contract imposed on appellee a fixed obligation to pay the vacation pay as of December 31, 1951. The complaint avers "the vacation pay

---

1. Appellee called to our attention three cases of Labor Arbitration Boards in disputes between the Union and employer over vacation provisions analogous to the one before us in this case: *Austin-Western Co.* (1946), 3 Lab. Arb. Rep. 570, 576; *Ross-Neeham Foundries* (1946), 5 Lab. Arb. Rep. 175, 176; *L. O. Koven & Bros., Inc.* (1950), 14 Lab. Arb. Rep. 207, 211. In each of these cases it was held the employee was not entitled to vacation pay if he was not on the payroll at the time vacations were declared.

did not become due until the employees took their vacations which was usually in July, thus in this case being July, 1952;". Article 9 of the Union agreement in clear and unambiguous language provided that only employees who were employed during periods ending during the vacation period would be entitled to vacation pay. (It must be kept in mind that the agreement for vacation pay does not provide for the accrual or proration of such pay which would entitle an employee to the amount accrued to the date of the termination of his employment.)

In the oral argument of this case the parties agreed that if appellee had ceased operating its business as of December 31, 1951 its employees would not be entitled to vacation pay for the six months period from July 1st to December 31st. We agree this is the only reasonable construction that can be given to the language of Article 9 of the Union contract. This being true, it seems apparent to us that appellee was not indebted for such pay. An entirely different question would be presented if the purchase and sale agreement had been entered into July 1, 1952.

As heretofore indicated, the contract providing for vacation pay was between the Union and appellee. When the purchase and sale agreement was finally consummated that contract terminated. If appellants subsequently operated under that agreement and voluntarily paid the vacation pay for the preceding year surely it cannot be seriously contended that such action on their part imposed an obligation on appellee to reimburse appellants for a pro rata share of the amount they so paid.

For the reasons herein stated, we hold the trial court

properly sustained appellee's demurrer to the complaint herein.

Judgment affirmed.

NOTE.—Reported in 115 N. E. 2d 731.