## THOMAS TYNAN v. KSTP, INCORPORATED.

77 N. W. (2d) 200.

April 27, 1956—No. 36,557.

*Thomas, Bradford, King & Collatz* and *Leonard, Street & Deinard,* for appellant.

*Thomas O. Kachelmacher,* for respondent.

NELSON, JUSTICE.

Plaintiff brought this action in the municipal court of Minneapolis to recover vacation pay allegedly owed him. Plaintiff was

employed by KSTP, Incorporated, defendant, as a technician. He had been so employed for approximately 17 years. He had continued his employment without interruption until on or about April 5, 1950, when a strike was called in which it appears that the plaintiff became involved; at least he voluntarily left the employ of the defendant on that date. As a member of Local No. 1216 of the Radio Broadcast Technicians Union, plaintiff's employment rights were prescribed in a collective bargaining agreement between the local and the defendant.

The provisions of said collective bargaining agreement here pertinent are set out below.[1]

The basic principles setting forth the purposes of the collective bargaining agreement may be found in the second paragraph thereof which reads as follows:

---

[1] "Article I.

"Section 1.01—Duration

"This Agreement shall take effect as of October 1, 1948 [1949], and shall remain in effect for a period of one (1) year therefrom. This Agreement shall continue in effect from year to year thereafter *unless changed or terminated in the way later provided herein.*

"Section 1.02—Termination or Changes

"Either party desiring to *change or terminate* this agreement must notify the other in writing *at least sixty (60) days prior* to the annual expiration date. When notice for changes *only* is given, the nature of the changes desired must be stated in the notice. *However, changes may be made at any time by mutual consent.* Any changes agreed upon shall be reduced to writing, signed by both parties hereto and approved by the International President of the Union, the same as this Agreement.

"Section 1.03—No Strike or Lockout

"There shall be no stoppage of operations either by strike or lockout during the term of this agreement because of any dispute over matters relating to the provisions herein, or during the time that any grievances or other matter is under arbitration as provided herein. All such matters must be handled in the manner provided hereinafter.

 * * * * *

"Section 1.06 * * *

"This Section shall not become operative until the National Labor Relations Board has conducted a balloting on the question of compulsory mem-

"The Employer, the Union and the Employees have a mutual interest in the broadcast industry. Stabilized conditions of employment improve the relationship between the Employer, the Union, the Employees and the Public. All will benefit by harmonious relations and by adjusting any differences on a rational common sense basis and through rational, common-sense methods."

The agreement was subject to the approval of the international president of the International Brotherhood of Electrical Workers. It was dated January 24, 1949, and approved March 15, 1949. This agreement took effect as of October 1, 1948, for a term of one year.

The agreement provided for an automatic renewal from year to year thereafter unless changed or terminated in the way therein provided. In July of 1949 the union through its representatives served notice on defendant of proposed changes in the agreement. The notice was served more than 60 days prior to October 1, 1949. The proposed changes were as follows: change in the duration of the agreement; change in wage scales; and change in vacation plans. The proposed change in vacation plans called for an amendment to

---

bership in the Union and has certified that the inclusion of such a clause is legal and in conformity with the Labor Management Relations Act of 1947.

\* \* \* \* \*

"Article III.

\* \* \* \* \*

"Section 3.08

"Technicians shall be granted vacations with pay as follows:

"(a) Any Technician continuously employed for six (6) months, but less than one (1) year, shall receive a vacation of fourteen (14) consecutive days.

"(b) Any Technician continuously employed for one (1) year or longer shall receive an annual vacation of twenty-one (21) consecutive days.

"Length of service for vacation purposes only shall be determined as of May 1st of each year. \* \* \*

\* \* \* \* \*

"\* \* \* Technicians who enter the Armed Forces \* \* \* or \* \* \* who are laid off because of a reduction in the Technician staff, shall \* \* \* receive vacation on a pro rata basis \* \* \*.

"(c) In consideration \* \* \* all previous holiday pay arrangements shall be eliminated." (Italics supplied.)

subd. (b) of section 3.08, Article III, to entitle employees to pro rata vacation pay on leaving "the employ of the Company either by lay-off or resignation." The collective bargaining agreement in force at the time of the notice of the proposed change provided that technicians who enter the armed forces of the United States, or technicians who were laid off because of a reduction in the technician staff, should be entitled to receive vacation pay on a pro rata basis for the year under consideration. The change, no doubt, was suggested by the union representatives because it was recognized that the latter provision was exclusionary with regard to the rights of all other members of the technicians staff to receive vacation pay on a pro rata basis for the year under consideration.

■ It is a well-recognized rule in the law that the express enumeration of one or more instances of many belonging to the same class impliedly excludes the others.[2]

The negotiation for the proposed changes extended beyond the expiration date of the agreement and continued until the union went on strike April 5, 1950, at which time the plaintiff left the employ of the defendant. On February 14, 1951, the plaintiff commenced this action for the recovery of the alleged portion of his vacation pay which he claims had accrued up to April 5, 1950.

In essence, it is plaintiff's position that the claimed vacation pay had been earned and had accrued during the period he worked for defendant after September 30, 1949. It is defendant's position that section 3.08 by all of its terms and provisions creates a condition precedent which requires full compliance by plaintiff in order to be entitled to any earned vacation pay by reason of continuous service after September 30, 1949, which was the date when the annual term of the collective bargaining agreement expired. It is conceded that the plaintiff continued in the employ of the defendant without inter-

---

[2]Egner v. States Realty Co. 223 Minn. 305, 318, 26 N. W. (2d) 464, 472, 170 A. L. R. 500; Matthews v. Minnesota Tribune Co. 215 Minn. 369, 10 N. W. (2d) 230, 147 A. L. R. 147; In re Public Ledger (3 Cir.) 161 F. (2d) 762, 772; Wm. Lindeke Land Co. v. Kalman, 190 Minn. 601, 607, 252 N. W. 650, 653, 93 A. L. R. 1393.

ruption through September 30, 1949, and up to April 5, 1950, when he voluntarily left, without returning, because of the strike.

The plaintiff based his suit upon the terms of the agreement dated January 24, 1949, effective for one year beginning October 1, 1948, and continuing through September 30, 1949, which provided that it shall continue in effect from year to year thereafter unless changed or terminated in the way later therein provided. He attached a copy of this agreement to his complaint and alleged that, under the terms of the contract, he was entitled to vacation pay at the rate of $95 per week for each week of vacation to which he might be entitled, and prayed for judgment accordingly. His weekly pay as a technician during his period of service under consideration here was the sum of $95 per week.

Defendant by its answer admitted the existence of the collective bargaining agreement providing for an annual term and automatic renewals; that the plaintiff was a member of Radio Broadcast Technicians Local Union No. 1216, affiliated with the American Federation of Labor, which organization is the labor organization referred to herein as the union; and that the plaintiff, at all times up to April 5, 1950, was one of the employees of the defendant for and on whose behalf the said agreement had been negotiated and executed. Defendant also admitted that the plaintiff had continued his employment as technician for a period of several years prior to his leaving the employ of defendant April 5, 1950, and that a labor dispute had theretofore existed between the union and the defendant due to the notice of proposed changes on defendant by the union in July 1949.[3] Defendant, however, denied plaintiff's right to recover vacation pay in any sum whatsoever on the ground that he had failed to fulfill the

[3]It has been held that an employee cannot obtain a right against his employer—not enjoyed by nonstriking employees—by going out on strike. Kitty Kelly Shoe Corp. v. United Retail Employes, 126 N. J. Eq. 374, 9 A. (2d) 295, reversed on other grounds, 126 N. J. Eq. 318, 8 A. (2d) 767.

"The occurrence of a strike does not excuse nonperformance" of a contract "in the absence of a stipulation relating thereto." 12 Am. Jur., Contracts, § 371. See, Annotation, 12 Ann. Cas. 313.

conditions of the agreement, which, if met, would entitle him to earned vacation pay.

The court below held the plaintiff entitled to recover from the defendant earned vacation pay on a pro rata basis covering the period beginning October 1, 1949, and ending April 5, 1950, under said section 3.08, subd. (b), of the agreement which provides for an annual vacation of 21 consecutive days with pay. Judgment was entered accordingly, after defendant had moved for amended findings and conclusions of law, or in the alternative for a new trial. This appeal is from the judgment.

The transcript of the testimony as disclosed by the record indicates oral stipulations entered into between counsel for the respective parties and testimony by the plaintiff on direct and cross-examination. The record is clear that the plaintiff was continuously in the employ of the defendant as a technician through September 30, 1949, to April 5, 1950; that no vacation rights for that period had been determined; and that he had no claim to prior vacation rights last determined as of May 1, 1949. He also testified that after April 5, 1950, he was on strike with the union and that he was a striking employee for some months thereafter. It appears from the record that the collective bargaining agreement herein involved was initially entered into in 1946, insofar as the inclusion of the vacation clause is concerned; that it was renewed in the same form in 1948; and that in 1949 the union attempted to have inserted, in the article granting to technicians vacation with pay, a clause granting additional vacation benefits in the event the employees quit or were discharged on a pro rata basis in the same manner as had been provided for technicians drafted into the army or who were dropped from the payroll because of a reduction in the staff. No agreement had been reached thereon.

The first issue is whether or not the plaintiff, having continued in the employ of defendant as a technician through September 30, 1949, to April 5, 1950, had earned vacation pay rights under section 3.08, subd. (a), of the agreement, which provides for a vacation of

14 consecutive days with pay after completing 6 months of continuous service.

Another issue is whether the court below erred in finding the plaintiff entitled to recover pro rata pay under said section 3.08, subd. (b), which provides for 21 consecutive days of vacation with pay after fulfilling the requirement of one year's continuous service, on quantum meruit based upon the theory of substantial performance or quasi-contract.

Plaintiff, however, only pleads and offers proof of his right to recover vacation pay under the express terms of the collective bargaining agreement expiring September 30, 1949, but subject to automatic renewal. The entire case proceeded through to judgment without plaintiff moving to amend the complaint and only offering his suggestion to amend after the court's findings of fact, conclusions of law, and memorandum had been entered and filed, to which defendant objected, and properly so. Plaintiff through counsel throughout the course of the proceedings at the trial and at every turn insisted and stated that the anniversary date of the contract was October 1, 1948; that it remained in effect from year to year thereafter, "except as to certain items, as to items which would be opened by the parties at any given time," and further emphatically stated in effect that there was no attempt on the part of the plaintiff to vary the terms of the contract in any way; that said section 3.08 of the agreement will be pertinent and will govern as to plaintiff's vacation-pay rights.

Plaintiff's counsel made the following statement to the court below:

"We are not attempting to vary the terms of the contract in any way. Let's put it this way: we are stating that the vacation period that we are talking about is for the year '49 and '50, and, of course, the interpretation of the contract is up to the Court. We're not varying the terms of any contract."

The record discloses that counsel for plaintiff had prepared the proposed changes of the collective bargaining agreement enumerated in the notice served upon the defendant in July 1949. Stipulations

apparently entered into between counsel for the respective parties during the proceedings at the trial were, among others, that the strike of April 5, 1950, was lawful and was not a breach of the agreement and that the agreement was in effect at the date of the strike. The agreement referred to was the collective bargaining agreement involved here. This and other stipulations were entered into concerning the renewal, existence, and breach of the written annual collective bargaining agreement. The court below, however, had stated that he placed no reliance on these stipulations. An examination of the record discloses, that they were largely statements of legal conclusions. While the court below refused to permit withdrawal of the stipulations, we consider this harmless error, for the questions to be determined being in the main legal questions with little if any mixed questions of law and fact, neither this court nor the court below can be bound by such stipulations. We are not bound to treat the stipulations entered into as an agreement concerning the legal effect of admitted facts. The stipulations would not be operative in that regard. The court cannot be controlled by agreement of counsel on a subsidiary question of law. Any stipulation as to an erroneous interpretation of the legal effect of the contract terms may properly be disregarded. This court must decide questions of law here involved, uninfluenced by stipulations of the parties or of counsel.[4]

Plaintiff is bound by practical construction of the contract by his union. See, Minneapolis-St. Paul Sanitary Dist. v. City of St. Paul, 240 Minn. 434, 61 N. W. (2d) 533. It is immaterial to a decision in this case whether vacation pay be considered a gratuity or additional compensation. See, Watwood v. Potomac Chemical Co. (Mun. App. D. C.) 42 A. (2d) 728; Montgomery Ward & Co. Inc. v. Guignet, 112 Ind. App. 661, 666, 45 N. E. (2d) 337, 339.

[4]Swift & Co. v. Hocking Valley Ry. Co. 243 U. S. 281, 37 S. Ct. 287, 61 L. ed. 722; Macklin v. Kaiser Co. (D. Ore.) 69 F. Supp. 137, 140; Owen v. Herzihoff, 2 Cal. App. 622, 84 P. 274; Bitterman v. Reinfeld (S. D.) 59 N. E. (2d) 548; National Bank of Colchester v. Murphy, 384 Ill. 61, 50 N. E. (2d) 748.

■ If the provisions for vacation-pay rights survive the expiration date of the annual agreement which was September 30, 1949, then the conditions precedent to the establishment of such rights survive too. See, Hartung v. Billmeier, 243 Minn. 148, 66 N. W. (2d) 784; Halm v. Hincher Mfg. Co. 124 Ind. App. 174, 115 N. E. (2d) 731; Matthews v. Minnesota Tribune Co. 215 Minn. 369, 10 N. W. (2d) 230, 147 A. L. R. 147; Kennedy v. Westinghouse Elec. Corp. 29 N. J. Super. 68, 101 A. (2d) 592.

Vacation agreements similar to those contained in the union agreement here have increased in use and are a customary provision in collective bargaining agreements at present, to the extent that now practically every union agreement provides for a paid vacation in some form. Although the courts of the country are not all in agreement as to the nature of a paid vacation, yet it is indicated that most of them agree that it constitutes a form of additional earnings and is not to be regarded as a gratuity.

"The appellate court in Division of Labor Law Enforcement v. Ryan Aeronautical Co. (1951) 106 Cal App2d Supp 833, 236 P2d 236, 30 ALR2d 347, said: 'Decisions have made clear that a contractual provision for vacation with pay is neither a gratuity nor a gift. It is a supplement to the employment agreement which in effect constitutes an offer of reward or additional wages for constant and continuous service.

"And the court in Textile Workers' Union of America v. Paris Fabric Mills, Inc. (1952) 18 NJ Super 421, 87 A2d 458, affd 22 NJ Super 381, 92 A2d 40, said: 'It is beyond dispute that an agreement to pay vacation pay to employees made to them before they performed their services, and based upon length of service and time worked, is not a gratuity but is a form of compensation for services, and when the services are rendered, the right to secure the promised compensation is vested as much as the right to receive wages or other form of compensation.' "[5]

It is necessary to keep in mind that liability as to vacation-pay rights is wholly contractual. See, Edelstein v. Duluth, M. & I. R.

[5]Annotation, 30 A. L. R. (2d) 351, 352.

Ry. Co. 225 Minn. 508, 31 N. W. (2d) 465; Marranzano v. Riggs Nat. Bank, 87 App. D. C. 195, 184 F. (2d) 349; Id. 94 App. D. C. 182, 213 F. (2d) 196; Dusenka v. Dusenka, 221 Minn. 234, 21 N. W. (2d) 528; see, also, Gilsey v. Wm. Hengerer Co. 285 App. Div. 1007, 139 N. Y. S. (2d) 1.

Plaintiff's entire approach to the trial of this case indicates that counsel representing him had this in mind. Plaintiff therefore insisted on proceeding under the terms of the express contract expiring September 30, 1949, with its provisions for annual automatic renewal.

Plaintiff's cause of action, as pleaded in his complaint which remains unamended, and the theory upon which plaintiff's demands were made and tried to a conclusion on the part of both plaintiff and defendant, definitely establish the insufficiency of the complaint and the record to sustain any award on quantum meruit, or on the basis of substantial performance or quasi-contract. Roberge v. Cambridge Co-op. Creamery Co. 243 Minn. 230, 67 N. W. (2d) 400; Briggs v. Kennedy Mayonnaise Products, Inc. 209 Minn. 312, 297 N. W. 342.

Likewise, failure to establish fault on the part of the defendant as a basis for plaintiff's claims to vacation pay bars a quantum meruit recovery. Stark v. Magnuson, 212 Minn. 167, 2 N. W. (2d) 814; Ylijarvi v. Brockphaler, 213 Minn. 385, 7 N. W. (2d) 314.

The application of the substantial performance theory applied by the court below to the particular facts of this case is without support in the record. Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co. 235 Minn. 243, 50 N. W. (2d) 629; Ylijarvi v. Brockphaler, *supra;* Malden Knitting Mills v. U. S. Rubber Co. 301 Mass. 229, 16 N. E. (2d) 707.

Article III, section 3.08, subd. (a), of the agreement states that technicians shall be granted vacations with pay upon the following conditions: any technician continuously employed for 6 months, but less than one year, shall receive a vacation of 14 consecutive days, and subdivision (b) of the same section provides that any technician continuously employed for one year or longer shall

receive an annual vacation of 21 consecutive days. Said section 3.08 further provides that the length of service for vacation purposes *only* shall be determined as of May 1 of each year; that vacations shall be given between May 1 and October 1 of each year, or at such other times as may be mutually agreed upon between the employer and any technician; and further that technicians shall have the choice of vacation periods in order of their seniority with the employer. Only technicians who enter the armed forces of the United States or technicians who are laid off because of a reduction in the technician staff shall be entitled to receive vacation-pay rights on a pro rata basis for the year under consideration, which in its legal effect excludes all others therein not enumerated. The last subdivision (c) of said section 3.08 provides that "In consideration of the above vacation provisions all previous holiday pay arrangements shall be eliminated."

It is clear that, under the collective bargaining agreement in force since 1948, the technicians surrendered all previous holiday-pay arrangements which had been contained in prior union agreements and they received in lieu thereof the right to certain granted vacations with pay conditioned upon fulfilling certain continuous periods of employment. These were 6 months of continuous service within the year covered by the annual agreement in order to become entitled to a vacation of 14 consecutive days and continuous employment as a technician for at least one year during the period of the annual contract in order to become entitled to a vacation of 21 consecutive days. At the end of each respective period of service, the granted vacation with pay as then established became earned and in legal effect choate.[6] It would be highly technical, and inequitable, taking into account the apparent conditions under which these granted periods of vacations with pay were entered into as successor provisions to all previous holiday-pay arrangements, to hold that another condition precedent for which the defendant contends exists, namely, that plaintiff's rights would be lost if he was not in the

---

[6]See, Kidde Mfg. Co. v. United Elec. Radio & M. Workers, 27 N. J. Super. 183, 99 A. (2d) 210.

service of the employer on May 1 of the year following the completion of the period of service.

Section 3.08 makes no such provision as was done in the case of Treloar v. Steggeman, 333 Mich. 166, 167, 52 N. W. (2d) 647, 648, where the contract providing for compensation in lieu of vacations stated that "employees on the seniority list of the company on December 1, 1947, who will have completed at least 6 months' work since December 1, 1946" were entitled to such compensation, which was payable on December 20. It was held in that case that the vacation compensation could not be recovered since the employees had failed to meet the requirement that they be on the seniority list of the company on December 1, 1947. The Michigan court distinguished the Treloar case from the case of In Re Wil-Low Cafeterias (2 Cir.) 111 F. (2d) 429, in that there the employee had met all the qualifying requirements for vacation pay, whereas in the Treloar case the plaintiffs had failed to meet one of the requirements established by the contract. In the Treloar case the agreement clearly prescribed the condition precedent that the employee should be on the seniority list on December 1, 1947, as well as having completed at least 6 months' work since December 1, 1946. The two conditions precedent there were clearly stated, and there could be no doubtful meaning to be resolved in plaintiff's favor. The court therefore said that we must apply the clear provisions of the agreement as we find them.

There is no such definite prescribed condition precedent to be found under the provisions of section 3.08 granting vacations with pay in the case at bar. May 1 of each year is simply prescribed as the date when length of service for vacation purposes shall be determined. We must therefore determine that, providing the plaintiff comes within the terms of the express agreement expiring September 30, 1949, and its provisions for automatic renewal, the only conditions precedent which must be met are continuous employment for the period of 6 months in order to receive a vacation of 14 consecutive days and continuous employment for one year to receive vacation

rights of 21 consecutive days—such employment being within the period of the annual term of the agreement.[7]

Both plaintiff and defendant have cited Anderson v. Tuomi, 230 Minn. 490, 42 N. W. (2d) 204, 17 A. L. R. (2d) 744. The trial court's decision there was based on the finding that there was a violation of an existing contract which constituted an unfair labor practice. If there was no contract and no strike, the basis for the court's injunction below failed. In that case this court was of the opinion that a contract of May 17, 1948, was not in effect August 8, 1949, but terminated upon failure of the parties to agree upon the substantial amendments thereto which had been timely demanded and proposed by the local union. The contract in that case specifically provided that it should continue on a year-to-year basis after March 31, 1949, *"unless written notice is given by either party to the other on or before 90 days prior to the annual expiration date, demanding that the agreement be amended or terminated."* (Italics supplied.) No question of vacation pay was involved under the terms of the agreement. A strike vote had been taken on January 7, 1949, while the contract effective on a year-to-year basis did not expire until March 31, 1949.

The collective bargaining agreement in the case at bar provides for its duration under section 1.01 of Article I—for termination or changes under section 1.02. After providing that either party desiring change or termination must notify the other in writing at least 60 days prior to the annual expiration date, it states that, when the notice for changes *only* is given, the nature of the changes desired must be stated in the notice, but that even if this be required, it provides "However, changes may be made at any time by mutual consent." It also further provides that any changes agreed upon must be reduced to writing, signed by both parties, and approved by the International President of the Union, the same as the agree-

---

[7]Division of Labor Law Enforcement v. Ryan Aeronautical Co. 106 Cal. App. (2d) Supp. 833, 236 P. (2d) 236, 30 A. L. R. (2d) 347; Division of Labor Law Enforcement v. Mayfair Markets, 102 Cal. App. (2d) Supp. 943, 227 P. (2d) 463; Knapp v. Atlanta Basin Iron Works, 116 N. Y. S. (2d) 456; Bondio v. Joseph Binder, Inc. (La. App.) 24 So. (2d) 398.

ment had to be approved in the first instance. Section 1.03 of said Article I provides that there shall be no stoppage of operations either by strike or lockout during the term of the agreement because of any dispute over matters relating to the provisions of the agreement or during the time that any grievances or other matter is under arbitration. No notice of termination was served by either party to the agreement; no action with reference to a strike was taken before April 5, 1950. Both sides mutually continued to operate under the terms of the express agreement expiring September 30, 1949, for a period of 8 months following the time notice of changes demanded by the union representative was served and for more than 6 months after the date of the expiration.

There is every indication from the attitude and the conduct of employees and employer that they were free to go about their business and continue as before even though negotiations were pending, since the contract provided for automatic annual renewal, and they were fully conversant with its terms and provisions.

We are not disposed to overlook the fact that the purposes of a collective bargaining agreement are such that the parties to it are necessarily presumed to have made it their main objective to state their agreement so as to avoid necessity for resort to the courts for an interpretation of its terms and what was mutually intended thereby. It is not only fair, but it is clearly reasonable, to assume that the bargaining agent as well as the employer both scrutinized the phraseology of the collective bargaining agreement in the instant case, as no doubt is being done in every such case, and that both sides insisted upon a clear and understandable phrasing of each and every express provision therein contained, the employees whom the bargaining agent represents being fully advised of the rights being bargained for. All terms and conditions of the agreement as to vacation-pay rights are clear and unambiguous. The other provisions of the agreement are equally free from ambiguity. There is little if any need to resort to practical construction.[8]

---

[8]Muir v. Leonard Refrigerator Co. 269 Mich. 406, 257 N. W. 723; Local Union No. 600 v. Ford Motor Co. (E. D. Mich.) 113 F. Supp. 834. In the interpretation of written agreements, construction lies only in the field of

Clearly here there was mutual assent to the continuance of the employer-employee relationship. No problem of unfair labor practices enters into the case at bar. Certainly there was every indication that the contract provisions, including those covering wages and vacations, were under the circumstances impliedly renewed for another annual term.[9]

In the case of Dennis v. Thermoid Co. 19 N. J. Misc. 614, 22 A. (2d) 535, affirmed, 128 N. J. Law 303, 25 A. (2d) 886, an employment contract which specified no term was interpreted to be on a yearly basis because of its provisions for a bonus figured on a yearly basis. Incidentally, the lower court in that case said (19 N. J. Misc. 617, 22 A. [2d] 537):

"In Williston on Contracts, par. 90, p. 155, it is stated: Where a contract of employment for a definite time is made, and the employee's services are continued after the expiration of the time, without objection, the inference is that the parties have assented to another contract for *a term of the same length with the same salary and conditions of service, following the analogy of a similar rule in regard to leases.*" (Italics supplied.)

Also, see Schott v. La Compagnie Generale Trans-Atlantique, 52 Misc. 236, 102 N. Y. S. 901, on the presumption that the parties consented to renew the contract for a like period and on the same terms.

 Plaintiff sued his claim and tried his case on this theory. No vacation-pay rights could accrue by reason of any continuous service on the part of the plaintiff as a technician after the annual contract expired September 30, 1949, unless either under the terms of the agreement automatically renewed or, through the attitude, acts, and the conduct of the parties to the agreement, it was mutu-

---

ambiguity. Grand Ave. Motor Co. v. United States (D. Minn. 1954) 124 F. Supp. 423; Kennedy v. Westinghouse Elec. Corp. *supra;* Minneapolis-St. Paul Sanitary Dist. v. City of St. Paul, *supra;* Phil G. Ruvelson, Inc. v. St. Paul Fire & Marine Ins. Co. *supra;* Montgomery v. Board of Education, 102 Ohio St. 189, 193, 131 N. E. 497, 498, 15 A. L. R. 715.

[9]Accidental Oil Mills v. Tomlinson (Tex. Civ. App.) 8 S. W. (2d) 558; National Manufacture & Stores Corp. v. Dekle, 48 Ga. App. 515, 173 S. E. 408.

ally treated as in effect by implication upon the same terms for another annual term. If continued by implication, it would, so far as the record discloses apparent mutual assent of the parties, be upon the same terms as the original express agreement for another annual term. Upon those conditions, and if so continued in effect, then all of the provisions of the agreement are effective and become enforcible. Whether the contract was automatically renewed or implied in fact through the mutual assent of the parties to the agreement makes little difference. We are forced to the conclusion here upon the record before us that the contract was continued in effect after the expiration date of September 30, 1949, under the terms of the express agreement and that the effective term was for another year and not at will. We think the facts here distinguishable from the facts in Anderson v. Tuomi, *supra*, and that the conclusions reached in that case are not controlling here. This case must be determined upon its own particular state of facts. The issues being of a legal nature, and having reached this conclusion, we hold that the record forms no basis for vacation-pay recovery to be awarded on quantum meruit or quasi-contract. We do, however, reach the conclusion that the collective bargaining agreement in the instant case was not terminated or abandoned, but was by the mutual assent of the parties continued in effect for another annual term, and that under the express provisions of the agreement plaintiff became entitled to an earned vacation with pay for a period of 14 consecutive days, or in lieu thereof, lawfully entitled to claim vacation pay rights at the rate of $95 per week for 14 consecutive days.

The case is remanded to the court below with instructions to make and enter its findings of fact and conclusions of law in accordance herewith.

Reversed and remanded.

ON APPEAL FROM CLERK'S TAXATION.

On June 1, 1956, the following opinion was filed:

PER CURIAM.

In the above case defendant, KSTP, Incorporated, appealed from judgment entered against it in the municipal court of Minneapolis,

wherein plaintiff recovered of the defendant $331.35, the amount found due and interest with $14 costs and disbursements as taxed and allowed amounting in all to $345.35. This court reversed, remanding the case to the court below with instructions to make and enter its findings of fact and conclusions of law in accordance with the opinion therein filed April 27, 1956, in which the amount of recovery of claimed vacation-pay rights was ordered pursuant to terms of contract entered into between Local No. 1216 of the Radio Broadcast Technicians Union, plaintiff's bargaining agent, and the defendant corporation and not otherwise. This resulted in recovery by plaintiff of vacation-pay rights limited to 14 consecutive days at the rate of $95 per week. The court below had found plaintiff entitled to recover pro rata vacation pay for the period from October 1, 1949, to April 5, 1950, inclusive, applying quantum meruit and the rule of quasi-contract.

M. S. A. 607.01 provides when costs and disbursements are taxable in the Supreme Court, and the provisions read as follows:

"Costs in the supreme court may be allowed, in the discretion of the court, as follows:

"(1) To the prevailing party, upon a judgment in his favor on the merits, not exceeding $25;

"(2) Upon dismissal, not exceeding $10.

"In all cases the prevailing party shall be allowed his disbursements necessarily paid or incurred."

We have held that, if a party prevails in obtaining a modification of order of the court below, he is the "prevailing party" so as to justify taxation of costs and disbursements against his opponent. Propper v. Chicago, R. I. & P. R. Co. 237 Minn. 386, 54 N. W. (2d) 840, 35 A. L. R. (2d) 459; Inland Products Corp. v. Donovan Inc. 240 Minn. 365, 62 N. W. (2d) 211; Hildebrandt v. Hagen, 228 Minn. 353, 38 N. W. (2d) 815.

Plaintiff in his objections to the bill of costs and disbursements filed by the defendant complains of the cost of the printing of defendant's brief and reply brief which together total 163 pages at a cost of $280.30 for the main brief and $68.25 for the reply brief.

Plaintiff submits that he limited his printed brief to 34 pages and that the cost thereof was approximately $70. He contends that the two briefs submitted by defendant were unduly long and extended and a large part of the cost thereof unnecessarily incurred. Plaintiff therefore claims that, because of the excessiveness of the printing cost due to unnecessary length of briefs, the costs and disbursements should be denied in full or in part, citing Solway State Bank v. School Dist. No. 26, 170 Minn. 83, 212 N. W. 25.

The clerk has heretofore denied the sum of $21.35 on the ground that a transcript involved was used in the court below. This was proper. In our opinion the briefs were of an unwarranted length and costs by reason thereof unnecessarily incurred. It is ordered that the printing bill for the defendant's briefs totalling $348.55 be reduced by one-half and denied as to the balance over that amount.

The remaining costs and disbursements will stand as taxed.