## LAWRENCE FERGON v. ESTHER COHEN.

128 N. W. (2d) 739.

May 15, 1964—No. 39,142.

*Paul J. Louisell*, for appellant.

*Eckman & Eckman*, for respondent.

THOMAS GALLAGHER, JUSTICE.

Action commenced February 16, 1962, for injuries sustained by plaintiff on January 6, 1957, as a result of his fall on an exterior stairway while delivering milk to a second-floor tenant in a duplex owned by defendant. Defendant denied negligence and contended that plaintiff's contributory negligence and assumption of risk barred his recovery. The jury's verdict was for defendant, and this appeal is taken from an order denying plaintiff's subsequent motion for a new trial.

In his motion for a new trial plaintiff contended that error had occurred with respect to a view of the premises taken by the jury under the court's direction; and that the court had erred in certain of its instructions to which exceptions were taken by plaintiff. In support of the motion, plaintiff's counsel submitted an affidavit in which he averred the following:

"* * * On Thursday A. M., September 27th [1962], * * * Judge Johnson directed a jury view of the premises involved in the lawsuit and said jury was taken to said premises and said Judge Johnson and the undersigned and C. L. Eckman, attorney for the defendant, and the plaintiff and one John Hastings, Bailiff of the Court were present at the premises for said view.

"Said Judge Johnson, instead of first taking the jury to the stairway where the plaintiff fell which was an outside 'back' stairway, first directed the jury's attention to a different stairway on a different side of the house, consisting of an outside stairway leading up to the 'front' porch and then of an inside stairway leading from said porch up to the second floor. The door opening from the said 'front' porch and leading into the inside stairway was locked and said Judge rang the doorbell and knocked on the door and attempted to secure entrance, and kept the jury's attention upon his efforts to gain entry there for a considerable period of time, probably about five minutes, and then de-

scended from said porch and the court and jury and counsel and plaintiff and bailiff went around to the side of the house where the 'back' stairway upon which the plaintiff had fallen was located. The said Judge instructed the jury that it would not be necessary for them to walk up the stairway upon which the plaintiff had fallen, but the said Judge himself mounted the said 'back' stairway to the landing at the top thereof * * *. He then came around and obtained the attention of the jurors and brought them back to the stairway leading up to said 'front' porch and invited all of them to mount the steps to said 'front' porch and to look inside the inside stairway * * *.

"The said court caused the jurors to view the interior stairway, and the 'front' porch and the outside steps * * * despite the fact that the plaintiff had testified unequivocally that he never knew that such an interior stairway existed, that he had never been told by anyone to deliver milk via said stairway, that there was no evidence that said door was unlocked at the time that he made his delivery on the day when he fell on the 'back' stairway * * * and despite the fact that the witness that had been a tenant in the second floor apartment on the day of the accident had said that the outside stairs leading to said interior stairway were defective on the day when said accident occurred."

Plaintiff's exceptions to the instructions, made before the jury retired and urged here as ground for reversal, included the following:

"* * * That the Court indicated to the jury twice in his charge that the failure to use the railing in and of itself would constitute contributory negligence, and they should direct a verdict in favor of the defendant if they found such a failure, and thereby characterized with particularity a minutiae of the evidence, and pigeon-holed the jury in their consideration the general rule of contributory negligence.

"* * * That the Court referred with particularity to * * * the condition of the premises * * * and instructed the jury that if the plaintiff knew or appreciated the condition that the stairway was in respecting its dangerousness of ice, that in such event they should direct a verdict in favor of the defendant on the issue of contributory negligence, and thereby particularized one single facet of the entire aspect of contributory negligence, assumption of proof, and negligence * * *.

"* * * the statement of the Court at the commencement of the charge repeated four times to the effect that the defendant was not an insurer but that the plaintiff must prove a case of negligence.

"* * * Repetition by the Court * * * referring to the obligation of the plaintiff to exonerate himself in effect * * * from contributory negligence and assumption of risk by virtue of the fact that though the Court correctly stated the proposition of law relating to proof, that it then factually referred to situations almost ad infinitum to the point where the jury must have lost sight of that principle."

After such exceptions had been taken, the court further charged the jury as follows:

"Owing to the length of the Court's instructions and the need to present several defenses that have been interposed here on this trial, the claim could be made that there has been an overemphasis of the defense or these defenses. All the Court can say relating to anything of that kind is that the jury use caution in seeing that both sides of this case receives full and careful consideration at the hands of the jury, and without any overemphasis on any particular phase of the case.

"I think with those cautionary instructions, unless there be something else, * * *?

"Mr. Louisell [plaintiff's attorney]: No, thank you, your Honor."

Subsequently, during its deliberations, the jury, through its foreman, requested a "restatement on the question of contributory negligence." Thereafter, in chambers and not within the jury's presence, the following proceedings took place:

"Mr. Louisell: Well, your Honor, I will have to vehemently protest the Court's going over the instruction on contributory negligence or having the reporter read it, because I foresaw this as the Court knows from the objections I made, the Court having spent about an hour and a half on the issue of contributory negligence.

"The Court: Not on the issue of contributory negligence.

"Mr. Louisell: Yes, I think so * * *. In fact, I couldn't understand why the Court hadn't granted a motion of the defense counsel for summary judgment in favor of the defense at the conclusion of the testi-

mony, in the language the Court's telling the jury that if the plaintiff didn't use a railing that he was contributorily negligent. Now, the evidence of visual inspection demonstrated that it would be difficult for the plaintiff to reach across the distance of the platform—

\*     \*     \*     \*     \*

"\* \* \* of the door where he deposited the milk and to grab that railing before he fell, and that instruction ignores the fact that the plaintiff fell right as he left the platform. There was no opportunity to reach that railing.

"The Court: That is a matter of proof, though, Mr. Louisell. It is a matter of proof, and the jury has viewed the premises so that it might understand all the proof there is in the case.

"Mr. Louisell: But the Court told them to find him guilty of contributory negligence if he didn't use the railing.

"The Court: I don't believe that is a correct interpretation of the instructions that have been given.

\*     \*     \*     \*     \*

"The Court: Will you give us the request of counsel now that he believes will suffice to answer the question of the jury.

"Mr. Louisell: I think, your Honor, I should correct my request: 'Contributory negligence is the failure to use that care which a person of ordinary prudence would use under the same or similar circumstances.' "

The court then had its previous instructions on contributory negligence read to the jury as follows:

"Now, by this time you certainly have noted the Court's use of the term contributory negligence. It could cause some of the jurors trouble. Contributory negligence is negligence on the part of the one injured which contributed proximately as a cause to the injuries involved. Contributory negligence is no different from ordinary negligence as the Court has defined it for you. It is exactly the same thing except we call it contributory negligence when it is the negligence of the injured party. It is the law that if one is negligent and a person is proximately injured thereby, but the injured person is also negligent proximately

contributing to cause his own injury, then the one injured cannot recover."

The court then continued:

"On that point, request has now been made that the Court give this jury a further instruction relating to contributory negligence in which the Court adds at this point:

" 'Contributory negligence is the failure to use the care that ordinary people would use under the same or similar circumstances. Contributory negligence is the failure to use that care which a person of ordinary prudence would use under the same or similar circumstances; and the burden of proof on the issue of contributory negligence is upon the defendant.'

"Mr. Foreman, do you think that answers the question of the jury?

"Foreman Wuolle: Yes, your Honor * * *."

The court then continued:

"Now, in having a restatement of the law defining, as the Court has now done on request of the jury, the Court simply adds as a precautionary instruction, and that is that the jury do not give overemphasis to this one question and this one phase of the case, but that all questions and all issues involved be considered fairly and conscientiously. * * *

* * * * *

"(Jury retires.)

"Mr. Louisell: If the Court please, may I add an exception. When I proposed to the instructions which the Court gave just now, that is, when I proposed that in chambers, I didn't understand that the Court was going to repeat its previous instruction and add my proposed instruction to those, and that I think it might have been preferable just to add, or just to give the instructions that I had requested."

■ The view taken by the jury was made upon motion of plaintiff's counsel as follows:

"* * * I would like to offer that the jury be allowed to see the entire stairs and the handrail and the platform and a side view of the plat-

form. The absence of any handrail on the right hand side next to the house, *the whole picture.* * * * we admit conditions have changed respecting the alleged house." (Italics supplied.)

The court thereafter stated to the jury:

"* * * the request for a view has been granted and this jury will have an opportunity to go out there and have a view of the premises in question. * * * some cautionary and some advisory instructions are in order. * * * The jury doesn't go out on such a view with the idea that they are going to play detectives and examine into the whole situation * * *. The purpose of such a view is to go out and get an idea of the particular place of this accident, the stairway in particular, the premises generally, and *I mean by that whether there be one entrance or two entrances, with a purpose so that this jury may better understand and interpret and analyze the testimony that you have heard, that is the purpose of a view.*" (Italics supplied.)

One of the issues for determination was whether plaintiff assumed the risk of injury by undertaking to walk on the icy outside stairway, with admitted knowledge of its condition, rather than choosing as an alternate route the inside front stairway. To familiarize the jury with the situation, the court directed that both the outside stairway, on which the accident occurred, and the inside front stairway, suggested as an alternate route, be viewed by the jury. No objection to this procedure was made by plaintiff's counsel, either prior to the departure of the jury when he was aware it was to be followed; at the place where the view was taken; or upon his return therefrom for resumption of the trial. No motion for a directed verdict on the issue of assumption of risk or contributory negligence was ever made by him, and no objection or exception was taken to the submission of these issues to the jury. See, Edelstein v. Duluth, M. & I. Ry. Co. 225 Minn. 508, 31 N. W. (2d) 465; Schlecht v. Schlecht, 168 Minn. 168, 209 N. W. 883. It was not until plaintiff's motion for a new trial that any claims were made having reference to errors occurring at the time the view was taken.

In a memorandum supplementing the order denying this motion, the court stated:

"* * * plaintiff has contended that the evidence is unimpeachable * * * that plaintiff did not have knowledge of another accessible stairway; for this reason it is claimed the plaintiff could not be guilty of contributory negligence * * *.

"Examination of the record would indicate that plaintiff had been making milk deliveries at the same apartment building here involved for about two months prior to the accident * * *. From the terrible condition of the stairway witnesses gave, it appeared all delivery men had notice of the unsafe condition of the stairway. How plaintiff did not have notice of it and failed to learn of the other entrance, seems an incredible inference.

"Edwin Kampf [upstairs tenant at the time], called as a witness by the plaintiff, testified * * * as follows:

\* \* \* \* \*

"Q. *And was the only access to your apartment through that open stairway on the outside?*

"A. *No, we could have went around the front.*

\* \* \* \* \*

"Q. So that you can go in on the east side and come up inside the house?

"A. You could have, yes.

"Q. What condition was that in?

"A. Well, the porch wasn't in very good condition, the steps outside weren't, at that time.

"Q. *But it was usable to delivery men if they wanted to use it?*

"A. *Yes, the front way, but they always used the back way.*

"Q. *In any event, they could have used the front way?*

"A. *Yes.*

\* \* \* \* \*

"Under this state of the evidence, it would appear that a jury question was presented whether or not the plaintiff, in the exercise of care, should have used the alternate stairway which is, by the way, the front entrance to the upper apartment. The question was so submitted to

the jury by the instructions of the Court. The jury was not obliged to accept plaintiff's disclaimer of knowledge or nonuser of the other stairway as conclusive.

\* \* \* \* \*

"\* \* \* on oral argument, counsel has urged that there was some irregularity in taking a view of the involved premises. This specification \* \* \* is supported by counsel's affidavit relating to the view. \* \* \* examination of the two full pages of typewritten affidavit does not in any place recite that the jury even looked at the stairs involved in the litigation. A re-reading of the transcript of the cautionary instructions of the Court shows that the Court carefully instructed the jury what was to be viewed. The stairway on which plaintiff fell received first mention, and the front stairway also received mention and was included in the view. Both were carefully viewed and time given the jury for the purpose. That the approach to the premises could more readily be made on the front, or west side facing the alley, and this stairway was first viewed, cannot be given the significance counsel would give it in his affidavit."

Under the circumstances described, we find nothing in this assignment of error which would compel reversal.

■ Plaintiff contends that the court in its instructions overemphasized the defenses of contributory negligence and assumption of risk and the principle that defendant was not an insurer with respect to the maintenance of her property. We have carefully examined the court's instructions on these issues. It is true that in some of them the court appears to have repeated in detail the burden of proof resting upon plaintiff and the principles applicable to defendant's burden of establishing contributory negligence and assumption of risk. We do not believe that this was done with any motive other than to make certain that the jury understood the principles which would govern its consideration of the issues and the evidence to which it must look with respect thereto. After plaintiff's exceptions and objections to such instructions had been made as above indicated, the court on two separate occasions cautioned the jury that it should gauge its consideration of the evidence and issues without any overemphasis on any one phase

of the case, particularly on the issue of contributory negligence. That such instructions did not influence the jury in defendant's favor on this issue appears evidenced by the fact that it returned for additional instructions thereon, at which time plaintiff's request for a specific instruction on this issue was complied with. In its memorandum commenting on this assignment of error, the court stated:

"* * * Plaintiff's case was one in which contributory negligence in several particulars prominently appeared. The plaintiff himself, by the claims made of the condition of the stairway and the prominence it was given, gave great emphasis to contributory negligence. The weak explanation by plaintiff of his failure to use an available handrail made a formidable prima facie case of contributory negligence in this particular. In at least three different particulars contributory negligence was an issue for the jury. Because contributory negligence stuck out prominently in the case in several particulars was no reason for the Court to minimize the defense.

* * * * *

"In the course of its deliberations, the jury returned for further instructions. The request was one for a restatement of the Court's charge relating to contributory negligence. At the time of this request from the jury, the record should indicate a conference was held between Court and counsel in an effort to comply with the request of the jury without overemphasis of contributory negligence. Counsel for the plaintiff urges that the fact that the jury returned for further instructions relating to contributory negligence evidenced overemphasis of this defense. On the contrary, it can be urged with equal, if not greater, weight that the very fact the jury required a repetition of instructions on contributory negligence that the subject had not received overemphasis.

"The Court has given the charge a careful re-examination and finds no reason in the instant case for criticism of the charge on the grounds of overemphasis. In the course of the instructions to the jury, the Court cannot help but note that on two separate occasions the trial court pointedly cautioned the jury against overemphasis of the defense."

It cannot be presumed that, because the court deems it advisable to

instruct a jury in detail on the principles governing the issues to be determined, and in the exercise of exactitude or caution repeats certain of such instructions in a desire to make certain that such instructions are understood, the jury will thereby become so confused or biased that it will be unable to arrive at a fair verdict. Some consideration must be given to the normal intelligence of jurors and to their natural desire to perform their obligations as jurors with impartiality and in good conscience. That is the fundamental basis upon which our jury system is founded. In view of all the circumstances here, and having in mind the cautionary instructions against overemphasis of any of the defenses, we hold that the procedure described did not constitute error.

Affirmed.